SARAH A. STAFFORD ET AL. V. JOHN W. HARRIS ET AL.

No. 6959.

1.   Jurisdiction of Probate Court — Case Adhered to. — Rose v. Newman, 26 Texas, 132, adhered to in holding that the Probate Court (in 1859) had no jurisdiction in partition proceedings, in an estate legally pending in administration, to cause a sale to be made through a trustee or commissioner.   Such sale is void.

2.   Ratification.—Parties actively urging the appointment of such commissioner, and thereafter recognizing his authority, are estopped thereafter to attack his acts under such appointment.   See facts held a ratification of a sale declared void when made.

3.   Cases Adhered to.—Ryan v. Maxey, 43 Texas, 192, and Grande v. Chaves, 15 Texas, 550, adhered to.

APPEAL from Travis.   Tried below before Hon. JOHN C. TOWNES. The opinion states the case.

*Fred. Carleton and F. G. Morris*, for appellants.—1.   The plaintiffs having shown a perfect legal title in themselves for two-thirds of the tract of land sued for in this cause, should have recovered the same, unless the defendants had shown a divestiture of the same and an investiture of it either in themselves or in some other party, or unless defendants had shown an equitable title which had not become a stale demand, or had shown a title acquired by limitation.   Rose v. Newman, 26 Texas, 132; Sypert v. McCowen, 28 Texas, 635; Carlisle v. Hart, 27 Texas, 350; Montgomery v. Noyes, 73 Texas, 203; Walet v. Haskins, 68 Texas, 418.

2.   The only title or pretended title set up by the defendants to this . land is founded on a sale made by Walter Andrus as commissioner appointed for that purpose by the Probate Court of Fort Bend County, Texas, which sale being void by reason of said court having no power to appoint a commissioner for such purpose, the plaintiffs should have had judgment for the two-thirds of the league and labor shown to have been owned by them.   Rose v. Newman, 26 Texas, 132.

3.   The only title set up and proved by the defendants being a sale made under order of the Probate Court of Fort Bend County to John H. Herndon, which sale was confirmed and deed ordered made, only vested an equity in the said Herndon, and such equity being more than twenty-five years old at the date of the filing of this suit, was and is a stale demand, and constituted no defense to the plaintiffs' action.   Sypert v. McCowen, 28 Texas, 635; McBee v. Johnson, 45 Texas, 634; Carlisle v. Hart, 27 Texas, 350; Connolly v. Hammond, 51 Texas, 635; Montgomery v. Noyes, 73 Texas, 203; Walet v. Haskins, 68 Texas, 418.

*S. R. Fisher*, for appellees.—1.   The court did not err in rendering judgment for the defendants.   Probate Courts are courts of general jurisdiction over the matters committed to them, and all presumptions are in favor of the regularity, legality, and validity of their proceed-

ings, which can not be impeached or inquired into except for fraud or want of jurisdiction. Heath v. Layne, 62 Texas, 686; Murchison v. White, 54 Texas, 83; Williams v. Ball, 52 Texas, 608; Guilford v. Love, 49 Texas, 715; Alexander v. Maverick, 18 Texas, 179.

(1) An order, judgment, or decree of a Probate Court which has assumed to exercise jurisdiction is conclusively presumed to be correct, if the record of such court shows that the steps required to clothe it with power were taken, or if the record be silent on the subject; and such order, judgment, or decree is not open to collateral attack. Martin v. Robinson, 67 Texas, 368 (reviewing Blair v. Cisneros, 10 Texas, 35; Fisk v. Norvel, 9 Texas, 15; Boyle v. Forbes, 9 Texas, 36; Wardrup v. Jones, 23 Texas, 489; Cochran v. Thompson, 18 Texas, 652; Merriweather v. Kennard, 41 Texas, 273; Duncan v. Veal, 49 Texas, 604); Pelham v. Murray, 64 Texas, 479.

(2) Proceedings of the Probate Court are not subject to collateral attack on the ground of want of jurisdiction, unless it sufficiently appears from the records of that court that its jurisdiction had not attached in the particular case under consideration.

(3) Jurisdiction or not must be determined by the recitals of the record of the Probate Court and the presumptions arising therefrom. Alexander v. Maverick, 18 Texas, 194; Giddings v. Steele, 28 Texas, 732; Brockenborough v. Melton, 55 Texas, 493, 503; Murchison v. White, 54 Texas, 78; 49 Texas, 715; 47 Texas, 355; 39 Texas, 579.

2. Appellants, who seek to disavow and repudiate the sale through which appellees trace their title, are estopped from so doing. They and those in privity with them were the parties who joined the administrator of the estates of William and Martha Stafford, deceased, in the petition to the Probate Court of Fort Bend County for the sale of this land, which sale was made, reported to, and confirmed by that court; and as they set on foot the proceedings and brought about and aided in bringing about the sale which subsequently resulted in appreciable injury to the purchaser Herndon, by the subjection of his property to forced sale in satisfaction of the debt incurred by him as purchaser, and as the rights of the defendants accrued through and under Herndon, while appellants and those under whom they claim acquiesced in the condition of affairs brought about by them, they can not now, after the lapse of nearly thirty years, be heard to question the validity of the sale. Ryan v. Maxey, 43 Texas, 193; Grande v. Chaves, 15 Texas, 550; Dancy v. Stricklinge, 15 Texas, 559; Giddings v. Steele, 28 Texas, 751, 752; Dalton v. Rust, 22 Texas, 133; Sypert v. McCowen, 28 Texas, 635; Portis v. Cummings, 14 Texas, 174, et seq.; Id., 79; 30 Texas, 569.

GARRETT, PRESIDING JUDGE, *Section B.*—This suit was an action of trespass to try title by the heirs of William and Martha Stafford to recover two tracts of land comprising two-thirds of a league and labor

situated in Brown and Coleman Counties. Defendants, who are the appellees, answered by a plea of not guilty, the several pleas of limitation, and a plea of stale demand.

The case was tried by the court without a jury, and judgment was rendered in favor of the defendants.

There is no statement of facts brought up in the record, but the judge who tried the case filed his conclusions of facts and of law, to which the plaintiffs excepted, and have assigned errors for revision. The findings of facts are as follows:

"1. I find that the plaintiffs are heirs of William Stafford and Martha Stafford, and further that there are others, not parties to this suit, who are also heirs of said parties.

"2. I find that the defendants are the surviving widow and children of John W. Harris, deceased.

"3. I find that the land in controversy was located by virtue of a league and labor land certificate issued to John Sanders, and of which Matthew Cartwright was assignee.

"4. That after the death of William and Martha Stafford, Matthew Cartwright conveyed said certificate by warranty deed to the heirs of William Stafford one undivided half, and to the heirs of Martha Stafford one undivided half, said deed being dated November 22, 1849, and recorded in Coleman County September 11, 1885, and in Brown County September 12, 1887.

"5. That said certificate was located by John H. Herndon on the league and labor of land in controversy, under a contract by which he was to have one-third thereof for his services, and that said league and labor was patented to Matthew Cartwright, assignee of John Sanders, on the 17th day of August, 1854, by patent No. 152, volume 11, first class.

"6. That in 1857, 1858, and 1859 administration was duly and legally pending on the estates of William and Martha Stafford, in the Probate Court of Fort Bend County, Texas, C. C. Dyer being administrator, and said Dyer was the husband of Sarah Stafford, one of the heirs of said William Stafford.

"7. That said Probate Court took jurisdiction of said league and labor of land under said administration. That on February 2, 1859, the heirs of Martha and William Stafford all joined with the administrator in a petition for final partition and distribution of said estates, including the land in controversy.

"8. That in such petition said parties recognized and set out the undivided one-third interest of John Herndon in said land.

"9. That on said petition (Herndon having accepted service) the court appointed commissioners to make partition and distribution of said estate.

"10. That said commissioners reported to the court that they had divided said league and labor into three equal parts and numbered them, and that this was done to enable the court to separate the interest of Herndon from that of the estate, such division of the league being made by running two lines north and south, so as to make three tracts, each being 1891⅔ varas wide and 4510 varas long, the short lines being east and west lines, and the long lines being north and south lines.

"11. That Herndon drew and got the middle one-third of said land, and the same was set aside to him by order of the court.

"12. That the commissioners further recommended the sale of the interest of the estate as incapable of division in kind, appraised same at $1 per acre, and stated definitely the respective share of each distributee in the property.

"13. That thereupon the court adjudged the property incapable of division in kind without manifest injury to said heirs of Martha and William Stafford, and appointed Andrus, clerk of the court, as a special commissioner to sell the same, ordering same to be sold on first Tuesday in May on twelve months credit, with personal security and lien on the land.

"14. That the special commissioner sold the land, after due and legal notice, on June 7, 1859, to John H. Herndon, for the sum of 41 cents per acre, aggregating $1238, on credit of twelve months.

"15. That said sale was duly reported to the court as having been made in all respects as required by the order of sale, and was by the court examined and confirmed, and title was ordered to be made, taking personal security and reserving lien on the land to secure the purchase money.

"16. That no deed has been proved or produced in court from Walter Andrus, commissioner, to John H. Herndon, but that under the circumstances of the case the execution and delivery of a deed, reserving a lien in conformity with the order of sale and confirmation, is presumed.

"17. That the commissioner took the note of John H. Herndon, with personal security, for the amount of his bid, to-wit, $1238.

"18. That when this note fell due the commissioner brought suit on it in his own name for the use and benefit of said heirs of William and Martha Stafford, and dismissed as to the sureties, and took judgment by default against Herndon, but did not foreclose nor attempt to foreclose any lien on the land, nor did Herndon plead any failure of title or other defense.

"19. That at that time Herndon was solvent and amply able to have paid the judgment, and same could have been realized from sale of his property; but for some cause, presumably the operation of the stay law, no process was sued out against him till January, 1868.

"20.   That in January, 1868, and again on May 11, 1868, respectively, executions were issued on said judgment and a considerable amount of real estate in the town of Richmond, and other lands in Fort Bend County belonging to said John H. Herndon, were levied on and sold, realizing nearly $1000.   That a portion of this real estate was bid in by the commissioner for the use of the heirs of William and Martha Stafford, bringing $105.   The heirs refused to receive this property and disclaimed title thereto.   The amount of cash actually coming to the hands of the commissioner is left in doubt, the copies from the execution docket showing that he got all the proceeds of the sale into his personal possession, except the $105 item above referred to, $69 paid for costs, and $268 shown to have been in the hands of his attorneys; his (Andrus') testimony being to the effect that he did not now know the amount brought by the property, but he thought not more than enough to pay costs of suit and attorney fees was realized therefrom.

"21.   That in 1869 Herndon took the benefit of the bankrupt law, and the balance due on this judgment was proved up by Walter Andrus, commissioner, for the use of the heirs of said William and Martha Stafford, as a claim, without security, against his estate, and took its due course in the administration of said estate in bankruptcy.

"22.   That under the bankrupt proceedings whatever title John H. Herndon had in the lands in controversy passed to John W. Harris, by purchase, by deed dated August 4, 1869, and duly executed by the assignee in bankruptcy under proper orders of the court authorizing and confirming the sale, and said deed was recorded in Brown County May 3, 1872, and in Coleman County February 2, 1881.

"23.   That John H. Herndon and John W. Harris have paid taxes on the said land continuously since the sale by Andrus, commissioner, in 1859.

"24.   That the land in controversy lies partly in Brown and partly in Coleman Counties."

Appellants have made the following assignments of error, which are relied on to reverse the judgment of the court below:

"1.   The court erred in rendering judgment for the defendants, because the evidence introduced by the plaintiffs and the defendants shows that the land sued for in this cause was the property of the plaintiffs.

"2.   The court erred in not rendering judgment for the plaintiffs for the land in controversy in this cause, because the evidence introduced by the plaintiffs and the defendants shows that the plaintiffs had a perfect title to the same.

"4.   The court erred in its sixth finding of law, such finding being as follows:   'That the land sold by the commissioner was subject to the vendor's lien to secure the payment of the purchase money, and as the order of sale required the lien to be expressly reserved, the presumption obtains that the deed was so made and the superior title re-

mained in the vendors.   This title could have been asserted by them
at any time before payment of purchase money, had they elected to
pursue such remedy; it was a right and privilege to which they were
entitled, but it was also one which they could waive, and a suit for the
money due on the note and getting judgment thereupon was an elec-
tion by them of an inconsistent remedy and a waiver of their right to
the land, and as the debt evidenced by the note has been discharged
(1) by partial payment, and (2) as to the balance by the bankruptcy
proceedings, they can not now recover the land.' "

From the view which we take of the case we do not deem it neces-
sary to discuss the question presented by the fourth assignment of error
any more than we may do so incidentally.

The legal title to the land in controversy was unquestionably in the
plaintiffs, who are shown to be the heirs of William and Martha Staf-
ford, deceased.   Plaintiffs have brought a naked suit of trespass to try
title, and if their recovery in this case is to be defeated it must be done
by such equities as may have grown up in favor of the defendants that
will estop the plaintiffs from asserting their legal title against them.
If the defendants have equities and the plaintiffs desire to recover the
land they must do equity.   They have not offered to do equity, but rely
entirely on the strength of their legal title.

There being no statement of facts, it will be presumed that the deed
from Cartwright conveying to the heirs of William Stafford an undivided
one-half and to the heirs of Martha Stafford an undivided one-half of
the land was made under such circumstances as to vest the title in them
subject to the administration of the estates of the said William and
Martha Stafford then pending in the Probate Court of Fort Bend County,
the parties having placed that construction upon it.   The estates were
administered together, and the husband of one of the heirs (Dyer) was
the administrator.   All of the heirs joined with the administrator in an
application filed in said estate for a partition of the land.   J. H. Hern-
don, who claimed one-third as a locative interest, was made a party to
the proceedings and accepted service and appeared.   An order was
made by the court directing a partition and appointing commissioners
for that purpose.   The commissioners divided the league and labor into
three tracts, one to be set apart to Herndon as his one-third, and the
others, which they appraised at $1 an acre, they reported as incapable
of further division among the heirs and recommended the sale thereof.
Herndon drew the middle tract, and it was allotted to him by the court
in a decree confirming the partition.   In this decree the court further
ordered a sale of the two other tracts for partition of the proceeds among
the heirs, and appointed one Andrus, who was the clerk of the court,
as a commissioner to sell the land for that purpose, the same to be sold
on a credit of twelve months with personal security and a lien reserved.
Andrus in conformity with the order of the court advertised and sold

the land, and J. H. Herndon became the purchaser at 41 cents an acre, aggregating $1238. The sale was reported to the court and was by the court approved, and commissioner Andrus was ordered to execute a deed for the land, taking personal security, and reserving a lien thereon to secure the purchase money. No deed has been presented by the defendants or shown to have been executed.

It has been held by our Supreme Court that a sale made by a commissioner appointed by the County Court in such case is void. Rose v. Newman, 26 Texas, 132. While the County Court in the administration of estates is a court of general jurisdiction, and, having jurisdiction of the subject matter, every presumption is indulged in favor of the rightful exercise of its jurisdiction, still, when an order shows on its face the entire want of jurisdiction to make the same, it must be held invalid, and may be impeached in a collateral proceeding. The report of sale was of the sale of the land as made by a person who was unauthorized to make it. It was of a void sale. The order of confirmation undertakes to confirm a sale which appears from the order itself to be a void sale. A purchaser looking to the order of confirmation would be informed that it was made by a person who was unauthorized by law to make it, and consequently of its nullity. It follows that there was not a valid decree of confirmation made in the proceeding to make the sale for partition sufficient to protect J. W. Harris in his purchase of the land.

But the facts show that all of the heirs of William and Martha Stafford joined in the application for partition, and that at their active instance Andrus was appointed by the court to sell the land for the purpose of dividing the proceeds among them. The land was in fact sold to Herndon, although the sale was invalid, and he executed a note with personal security therefor. In 1860 Andrus, for the use and benefit of the heirs, brought suit on the note against Herndon. It was in effect a suit by the heirs against Herndon. They were parties to the suit, and the real parties thereto, and became bound by the judgment that was rendered therein. Smith v. Mosely, 74 Texas, 632; McFaddin v. McGreal, 25 Texas, 73; Heard v. Lockett, 20 Texas, 162. That suit was a ratification of the sale by Andrus to Herndon. No vendor's lien was asserted or foreclosed. There was a dismissal as to the securities, and a personal judgment was taken against Herndon alone for the amount due on the note, which was the amount that Herndon had undertaken to pay for the land. At the time the judgment was obtained Herndon was solvent, and the money could have been made on the execution against him. No execution was ever issued until January, 1868. On May 11, 1868, another execution was issued. Under these executions a considerable amount of real estate in the town of Richmond and other lands in Fort Bend County belonging to Herndon were levied on and sold, and nearly $1000 was realized from these sales.

This process must be held to have been issued at the instance of the plaintiffs, as they were the real parties to the suit, and Andrus had been representing them for years. It was issued on a judgment which they had never in any manner disavowed or sought to set aside. It is shown that Andrus bought real estate in the name of the heirs and for their use at the execution sale to the amount of $105; but they refused to receive it and disclaimed title thereto. Of the balance of the proceeds, $69 went to pay costs, $268 into the hands of the attorneys of Andrus, and the remainder seems to have been paid to Andrus. This occurred in 1868. It is not shown when the heirs declined to receive the land and disclaimed title to it; but no steps were taken by them to have Andrus to account or to take the management of their affairs from his hands.

In 1869 Herndon went into bankruptcy, and Andrus becomes again the representative of the plaintiffs in proving up for their use and benefit the uncollected balance of the judgment against Herndon as a claim against his estate in bankruptcy, without any attempt to subject the land to the payment thereof. The heirs are before the court and prove up their claim, and the land is in the custody of the court subject to their lien, if they still have any. No lien was asserted, and the land was sold by the assignee under proper orders of the court, and Harris became the purchaser thereof, and a deed was executed to him by the assignee. When Harris came to buy he found that the beneficiaries of the land, the heirs of William and Martha Stafford, had treated a void sale as valid, and had chosen to enforce the obligation of Herndon for the purchase money rather than to reclaim the land. He saw that a large amount, nearly all of the principal, had been already collected on the judgment which they had obtained against Herndon by the sale of his property; and that the heirs had not only abandoned any lien on the land in the institution of their suit against Herndon on the note, but that they had also proved up the balance of the judgment against the estate of Herndon in bankruptcy without security when the identical land was then in the custody of the court.

In the case of Ryan v. Maxey, 43 Texas, 192, a minor acting by his guardian, and two married women, joined by their husbands, were parties to a proceeding instituted by one of the married women and her husband in a guardianship for partition, and by their agency and procurement an order was made directing the sale of land to raise funds to pay debts which were a charge on the estate. It was contended in a suit by them afterward to recover the land that the County Court had no jurisdiction to make the order, as one of the minors whose estate was being administered had died before the order was made. It was held unnecessary to determine whether the court had jurisdiction or not, as under the facts the plaintiffs were estopped from enforcing their claim to the land. In Grande v. Chaves, 15 Texas, 550, the administration

was void in which the sale of the land was ordered, but the plaintiffs had gone into court, had urged the sale, and had received the proceeds. The court say: "Their acts show such an acquiescence as to amount to a ratification, and they can not be permitted to disturb the rights of purchasers under sales freely made and with their consent, and from which they have received the benefit." Judge Hemphill went on to say: "Or, if they have not received the proceeds, the courts are open, and their agent, if he have no valid defense, can be made to account. The rights of the purchasers can not be affected by any equities which may exist between the plaintiffs and the administrator."

For ten years Andrus was representing the plaintiffs in this suit in the partition and collection of the proceeds of the land. Herndon's interest was satisfied by setting apart to him his one-third interest therein. Andrus sold the portion belonging to the heirs of William and Martha Stafford for their benefit, and represented them in a suit to which they were parties for the collection of the proceeds of the sale, and finally in the proof of the balance of their judgment as a claim against the bankrupt estate of Herndon. If Andrus as the agent of the heirs was negligent or remiss in his duties, or failed to account for moneys collected by him, the courts were open to the plaintiffs and they could have forced him to an account. On the contrary, they continued to acquiesce and permitted the sale of the land to be made by Herndon's assignee in bankruptcy to Harris without protest or the assertion of any lien thereon, when they were before the court asserting and proving up their claim for a balance on the judgment. It would seem little short of estoppel by record. Herndon had up to that time paid the taxes on the land, and Harris and his heirs have paid them ever since. In September, 1887, the plaintiffs brought this suit for the recovery of the land in a naked action of trespass to try title, without any offer to restore any part of the proceeds collected by them. Coddington v. Wells, 59 Texas, 49.

We are of the opinion that the plaintiffs are estopped to recover the land sued for, and that the judgment of the court below ought to be affirmed.

*Affirmed.*

Adopted November 10, 1891.

A motion for rehearing was overruled.

Chief Justice STAYTON not sitting.