NUNN et al. v. PEAVY et al. (No. 1378.)*

(Court of Civil Appeals of Texas. Beaumont. June 19, 1926. Rehearing Denied June 23, 1926.)

Adverse possession ⟨key⟩102—Relative to additional title by adverse possession, one who having recorded deed to wild land leased for pasturing inclosed part held not to lose his constructive possession of uninclosed part.

Relative to additional title by adverse possession of one who, having recorded deed to tract of wild land, leased to tenants, for purpose of pasturing, the inclosed part of it, he did not lose his constructive possession of the uninclosed part, but he, applying the property to the only use of which in its then state it was susceptible, should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the inclosed portion pasturing it himself.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Action by Jennie Knox Nunn and others against A. J. Peavy, trustee, and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Smith & Lanier, of Jasper, and C. A. Lord, of Beaumont, for appellants.

A. M. Huffman, of Beaumont, and Sleeper, Boynton & Kendall, of Waco, for appellees.

O'QUINN, J. This was a suit in trespass to try title to all of the Charles Gilchrist league of land situated in Jasper county, Tex., except certain small tracts, brought by appellants against appellees. The land was described in plaintiffs' petition as in two tracts, designated as "first tract" and "second tract," and excepting certain small tracts. The "first tract" was alleged to contain 2,375 acres and the "second tract" 1,733 acres, excluding two tracts of 100 acres each. The plaintiffs described the land sued for as in two tracts for convenience in presenting their title, the chain of title not being the same to both. They also sued for the value of timber cut from the land by appellees, which was of an agreed value of $35,000.

Appellees answered by general demurrer, general denial, and plea of not guilty. They also alleged that they owned the land by fee-simple title, and pleaded the three, five, and ten years' statutes of limitation as to all the land sued for by appellants.

The case was tried to the court with the aid of a jury. The only issue submitted related to the defenses of limitation under the three, five, and ten years' statutes, and they were all submitted as special issues and all answered by the jury in favor of appellees, upon which judgment was rendered for appellees, from which plaintiffs have appealed.

It appears from the record that Charles Gilchrist was a colonist in the colony of Lorenzo de Zavala, and on November 20, 1835, there was issued to him by the Mexican government as such colonist a grant or certificate for a league of land which was located upon the land in question.

Appellants offered as evidence of their title:

(1) The grant from the Mexican government to Charles Gilchrist, dated November 20, 1835, and recorded in Jasper county, Tex., April 21, 1853.

(2) Deed from Charles Gilchrist and wife, Jane Gilchrist, to William Jones, dated May 6, 1837, conveying the south two-thirds of the league, which deed was recorded in Jasper county on November 30, 1837.

(3) Deed from William Jones and wife to Abel Adams dated December 15, 1851, recorded May 25, 1852, conveying the south two-thirds of the league, and which comprised the 2,375 acres described in the plaintiffs' petition as "first tract."

(4) Deed from Abel Adams and R. C. Doom to A. A. H. Knox, dated December 2, 1858, and filed for record on said date, conveying the south two-thirds of said league, containing the 2,375 acres described as "first tract."

(5) They asserted title to the north one-third of the league described by them as "second tract," containing 1,733 acres, through a deed from W. B. Williamson and his wife, Sarah Ann Williamson, to Stephen Everett, of date December 23, 1840, filed for record October 8, 1857. This chain of title to said one-third of the league finally lodged in A. A. H. Knox. There was nothing to show how, if at all, Williamson got title. Appellants insist that a deed from Charles Gilchrist to Williamson should be presumed.

(6) Proof that appellants were the heirs at law and the only heirs of A. A. H. Knox and wife.

In connection with their title, appellants offered certified copies of documents out of the general land office of Texas, as follows:

(a) Petition to the Legislature of the state of Texas, reciting that Charles Gilchrist emigrated to Texas prior to the Declaration of Independence March 2, 1836, was a married man, head of a family; had resided continuously in the state until his death, had performed the duties of a good citizen, and had not received but one labor of land, and that his heirs were entitled to one league of land.

(b) Affidavit of James Armstrong, setting forth that he was well acquainted with Charles Gilchrist from the year 1835 until his death, which occurred some four or five years prior to the date of the affidavit, January 26, 1858.

(c) Affidavit of H. C. Pedigo, of date January 20, 1858, that he knew Charles Gilchrist personally, and that he died some three or four years prior to the making of the affidavit, and that he left a widow and children.

(d) Affidavits of Thomas B. Huling and George W. Glasscock, dated December 29, 1857, to the effect that they knew Charles Gilchrist; that he was a resident of Zavala's colony, and resided on the league of land in question, located in Jasper county, Tex., from about 1835 to 1839, and that he performed the duties of a citizen.

The above, it appears from the record, were presented to the Legislature of the state of Texas in 1858 for the purpose of getting the Legislature to confirm the grant made to Gilchrist on November 20, 1835, which was void because of being issued after the closing of the land office on November 13, 1835, but the application was rejected on the ground the grant being void it could not be so confirmed.

(e) Certified copy of a special act of the Legislature approved February 16, 1858, authorizing and requiring the commissioner of claims to issue to "the heirs of Charles Gilchrist a certificate for one league, in consideration of a grant issued by Geo. A. Nixon to said Gilchrist on November 20, 1835."

(f) Certified copy of a certificate issued on February 25, 1858, that the heirs of Charles Gilchrist were entitled to have surveyed "upon any of the vacant and unappropriated public domain of the state of Texas one league of land in consideration of grant issued by Geo. A. Nixon to said Chas. Gilchrist, the 20th of November, 1835," which was filed September 9, 1869.

(g) Certified copy of the field notes of the

Gilchrist league survey made for the heirs of Charles Gilchrist giving field notes and covering the league of land in controversy.

(h) Certified copy of patent by the State of Texas to the heirs of Charles Gilchrist to the land in question, dated November 3, 1870.

The record showed appellees to be the owners of the title of the heirs of Charles Gilchrist under the patent from the state to the land in controversy. In addition to this title they plead that they had title to the land by and through the three, five, and ten years' statutes of limitation.

Numerous interesting propositions and counterpropositions, presented and ably briefed, are urged by appellants and appellees relating to the legal effect of the grant from the Mexican government to Charles Gilchrist on November 20, 1835, and his deed to Jones in 1837, etc., through which line of conveyances appellants claim title to the south two-thirds of the league; also, as to whether the granting to the heirs of Charles Gilchrist by special act of the Legislature in 1858 of a certificate for a league of land and its subsequent location upon the same land as was claimed by the location of the original grant of November 20, 1835, had the effect to legalize and make valid the title to said land in Charles Gilchrist's grantees, inured to the benefit of the grantees of Charles Gilchrist, or whether the title to said land was wholly in the heirs of said Charles Gilchrist by virtue of the patent to them from the State and finally rested in appellees. Several other questions were raised and presented by the parties, but the court, after hearing the evidence, manifestly concluded, as shown by his charge, that, regardless of these questions, it appearing that appellees were holding under deeds duly registered, having possession and having paid all taxes as required by law, that the answers of the jury to the special issues of limitation would settle the case, and so submitted only those questions. We believe that the court was correct and that it was not necessary to a full and correct determination of the matter to submit the other questions presented, and therefore we pretermit any discussion or determination of them.

The contention of appellants that the possession and use of the premises by appellees, through their tenants, was not such as would support limitation is overruled. The insistence is that the fences inclosing the pastures were not kept up and gates kept closed so as to amount to a continuous and exclusive possession. After a careful consideration of the record we believe that the evidence is sufficient to show that the possession, maintenance, and control of the pastures were continuous and exclusive, that the answers of the jury have sufficient support in the record, and therefore the judgment must be affirmed.

But appellants insist that the possession relied on by appellees, through tenants using the Ott Smith pasture, which inclosed 1,393 acres on the south two-thirds of the league, and the Shelby pasture, which inclosed 1,128 acres on the north one-third of the league, were limited tenancies, and the adverse possession of the land inclosed in these pastures did not extend to the entire league or claim of 3,314 acres and entitle appellees to recover same, even if it was such as entitled them to recover the land in said pastures. In other words, appellants insist that the possession of appellees, through their tenants, was not sufficient to support the judgment awarding to them the whole of the two tracts in controversy, for in that some 844 acres of land was shown, they say, not to have been in the possession of appellees because not within any of the inclosures, and therefore the judgment, at least as to that, was erroneous.

The possession asserted by appellees was through tenants under lease contracts. On September 29, 1900, the Texas Lumber Company, the then owner of the title of the heirs of Charles Gilchrist by virtue of the patent to them from the state to the land in question, leased to O. W. Smith (referred to in the record as Ott Smith) for a period of 15 years "1,125 acres, the west end of the Charles Gilchrist and William Jones league of land," at a rental of $33.75 per year. While the lease to Smith estimated the land leased to be 1,125 acres, the record discloses that Smith actually took possession of and fenced 1,393 acres on the Gilchrist and 1,404 acres on the Jones, making 2,793 acres in the "Ott Smith pasture," showing, we think, that no limitation was placed upon the quantity of land intended to be leased, and therefore nothing in the lease, as interpreted by the parties and actually carried out, restricting the possession and use to any particular 1,125 acres, so that the description in the lease did not restrict or limit the land which was taken possession of under the lease. On June 6, 1916, T. P. Glenn became the successor to Smith in the lease right through a lease contract with Wm. Cameron & Co., the then owner of the land by purchase from the Texas Lumber Company, the lease describing the land by metes and bounds, same being the boundaries of the Smith pasture, and stating that it included 1,404 acres of the Jones league and 1,393 acres of the Gilchrist league.

The possession and use of the Smith pasture was continuous and unbroken. This possession was on the south two-thirds of the Gilchrist league and the tract described by appellants as "first tract." On December 16, 1912, Wm. Cameron & Co., the then owner of the land by purchase from the Texas Lumber Company, leased to R. P. Shelby 3,314 acres of the Gilchrist league, same being all of the land claimed by appellees in said league and being the land in controversy, he to remain a tenant at will, the lease reciting that

at said date he was "occupying, using, and enjoying portions of the following described tract of land," describing the whole tract of 3,314 acres. The record shows that the occupancy and use by Shelby were for pasture purposes, and that an inclosure was built by him, including some 1,100 acres. This was on the north one-third of the league, the land described in appellants' petition as "second tract." On October 9, 1914, Shelby executed another lease contract with Wm. Cameron & Co., the lease reciting that he was then "occupying and using for pasture purposes only a portion of the Chas. Gilchrist survey, * * * and being that portion of said survey bounded on the north by the north line of same and two 100-acre surveys in the name of S. J. Shelby, on the west by the Angelina river, on the south by the Ott Smith or Lewis pasture, and extending east so as to contain 1,100 acres, more or less," acknowledging himself to be a tenant at will, and obligating himself to deliver up the premises upon demand and to pay a rental of $33 per year while he occupied same. This lease did not mention the first lease, wherein he leased the entire 3,314 acres, and there is nothing in the record to indicate that it was intended to annul the first lease. His possession under the first lease carried with it constructive possession of all of the uninclosed land in controversy and the subsequent possession of the 1,100 acres, more or less, referred to and described in the second lease, we think, did not destroy such constructive possession. He was occupying under both leases. The possession and use of the inclosed premises were continuous and unbroken. On the authority of Bowles v. Brice, 66 Tex. 724, 730, 2 S. W. 729; Puryear v. Friery, 16 Tex. Civ. App. 316, 40 S. W. 446 (writ refused); Haynes v. Texas & N. O. Ry. Co., 51 Tex. Civ. App. 49, 111 S. W. 427 (writ refused); and Houston Oil Co. v. Niles (Tex. Com. App.) 255 S. W. 604, the contention of appellants is overruled. Appellees in leasing to Smith and Shelby applied the land to the only use of which in its wild state it was susceptible.

The lease to Glenn and the second lease to Shelby described the premises by following the fences of the lessees which were already established. The case of Bowles v. Brice, supra, was a suit in trespass to try title to a tract of land on which was situated a farm. Appellee, Brice, in addition to his paper title, claimed title to the land by the statutes of five and ten years' limitation. Brice was in possession of the land through tenants. His tenants had no right or authority over the land not in cultivation. Appellant, Bowles, presented to the court a special charge to the effect that if the tenants through whom appellees and those under whom they claim, held possession and occupied only the cultivated land, and their lease included no part of the land but this, then the possession of appellees extended only to the part of the premises so occupied. This charge was refused, and its refusal assigned as error. Judge Gaines, in passing upon the question, said:

"The question is, must the possession in this case be restricted to the portion of the premises actually occupied by the tenants? It is held in Read v. Allen, 63 Tex. 154, and in Texas Land Co. v. Williams, 51 Tex. 61, that when a party claiming land leases by written contracts specific parts of it, describing them by metes and bounds, his possession through his lessees extends only to the parcels so defined. This is in accordance with the principle laid down in Cunningham v. Frandtzen, 26 Tex. 34, that where one in possession of a tract of land sells the portion actually occupied by him, his constructive possession which before existed as to the remainder, immediately determines. But we consider that we have a different case before us. Shall a party who lets to tenants for the purpose of cultivation, the improved part of a tract of land, be deemed to have lost his constructive possession of the portion which is unimproved? We think not. He applies the property to the only use of which it is susceptible, and should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the improved portion, cultivating it himself."

This identical question was again passed upon in Puryear v. Friery, supra, and the holding in Bowles v. Brice approved and followed, and the Supreme Court refused a writ of error. The question was again before the courts in Haynes v. Texas & N. O. Ry. Co., supra, and Judge Reese, in discussing Read v. Allen, 63 Tex. 158, the case relied upon by appellants to support their contention of limited tenance, said Bowles v. Brice in effect overrules the holding in Read v. Allen, and approved and followed Bowles v. Brice. The Supreme Court refused a writ of error. We think the holding decisive of the question here involved. Paraphrasing the language of Judge Gaines in Bowles v. Brice, shall a party who lets to tenants, for the purpose of pasturing, the inclosed part of a tract of land, be deemed to have lost his constructive possession of the portion not inclosed? We think not. He applies the property to the only use of which it is susceptible, and should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the inclosed portion pasturing it himself.

Believing that the judgment should be affirmed, it is so ordered.

Affirmed.