**RAY et al. v. CHISUM et al.**

No. 6600.

Court of Civil Appeals of Texas. Texarkana.

March 5, 1953.

Rehearing Denied June 25, 1953.

Paul W. Jeffrey, Houston, J. A. Mallory, Lindale, Smith & Smith, Tyler, for appellants.

Ramey, Calhoun, Marsh, Brelsford & Sheehy, Lasseter, Spruiell, Lowry, Potter & Lasater, Tyler, Thompson, Knight, Wright, Weisberg & Simmons, Dallas, W. P. Z. German, James E. Hara, Tulsa, Okl., Ralph B. Shank, Dallas, Harry Loftis, Smith, Johnson & Hathaway, Warren G. Moore, Tyler, Jerome Chamberlain, Dallas, Frank L. McClendon, Tyler, T. B. Blanchard, Houston, for appellees.

LINCOLN, Justice.

Appellants filed this suit in trespass to try title to recover 200 acres of the Daniel Minor Survey of land, No. 1045, in Smith County. They claimed as heirs and the only heirs at law of B. B. Ray, deceased, grantee in a deed from H. O. Hynson, dated December 18, 1875, filed and recorded in the deed records of Smith County the same date. The plaintiffs also pleaded title under various statutes of limitation. The appellees, defendants below, filed pleas of not guilty, general denial and the

several statutes of limitation. They claimed the land sued for as grantees or heirs of grantees in instruments, consisting of warranty deeds, oil, gas and mineral leases, royalty deeds, etc. The parties on each side are numerous. The record is voluminous, including some 250 exhibits. At conclusion of the evidence the trial court denied the motion of the plaintiffs for an instructed verdict and granted a like motion of the appellees, and under instruction of the court, the jury returned a general verdict for the defendants. Judgment was entered that, except as to certain parties who had filed disclaimers, the plaintiffs and parties aligned with them take nothing by their suit, and that the appellees recover the title and possession of the land in controversy as their rights, titles and interests appear of record. The appeal is here without a motion for new trial under provisions of Rule 324, Texas Rules of Civil Procedure.

In their effort to discharge the burden cast upon them by the long-standing and well-established rule that the plaintiffs must recover, if at all, upon the strength of their own title and not upon the weakness of their opponents', 41 Tex. Jur., p. 497, Sec. 33, and in their attempt to trace their chain of title to the sovereignty of the soil, appellants put in evidence: (1) Land Certificate No. 446, issued by the Board of Land Commissioners for Nacogdoches County to Daniel Minor, for one-third league, 1,476 acres, dated March 21, 1838; (2) transfer of the certificate, May 17, 1837, from Daniel Minor to Abraham H. Scott, filed and recorded in Smith County January 9, 1874; (3) conveyance dated October 2, 1837, from Scott to Niles F. Smith of entire headright (unlocated) of Daniel Minor, filed and recorded in Smith County January 9, 1874; (4) transfer and conveyance of Daniel Minor Certificate No. 446, from Niles F. Smith to H. W. Carter, dated September 1, 1851, reciting that the conveyance from Scott to Smith, next above, was in trust for H. W. Carter. This instrument was recorded in Panola County, Texas, April 1, 1853, and a certified copy from Panola County was filed and recorded in Smith County, December 15, 1950, after

the suit was filed; (5) judgment of the district court of Panola County in cause No. 697, H. W. Carter, plaintiff, v. James Heffner, defendant, dated December 21, 1855; decreeing that the transfer of Certificate No. 446 from Scott to Smith, supra, was in trust for H. W. Carter, that Carter recover said certificate from the defendant, and that the defendant deliver the same to Moore, Carter's attorney of record. This judgment refers to Carter as H. W. Carter and as Hamilton W. Carter. On the margin of the minute book is a notation, dated January 17, 1856, signed "Chas. D. Moore, Atty. for Carter," acknowledging receipt of the certificate sued for. A certified copy of this judgment was filed in the County Clerk's Office of Smith County July 8, 1949, after this suit was filed, and duly recorded; (6) Patent from the State of Texas to Daniel Minor, dated August 27, 1861, filed for record in Smith County January 9, 1874.

It is questionable that the instrument referred to in item (4) above, even though admitted over appellees' objections, may be considered as a muniment of title in behalf of appellants. The stipulation under which counsel might introduce certified copies of records was more restrictive than that referred to by Judge Harvey in Woldert v. Skelly Oil Co., Tex.Civ.App., 202 S.W.2d 706, 707, in that it provided that the parties might introduce a certified copy "from the records of the office of the county clerk of any county in Texas *which was the proper place for record* of such instrument or act at the time of its recordation or performance of the act," subject to any other valid objection (italics ours). However if we should assume that the foregoing record evidence, existence of which is without dispute, vested title to the certificate and to the land located by virtue thereof in H. W. or Hamilton W. Carter, then we find that such title vested in said Carter as early as October 2, 1837, and was still vested in him as late as January 17, 1856. There is no direct record evidence of a transfer of title out of Hamilton W. Carter. Appellants' abstract of title, filed as demanded by appellees, after setting out the foregoing instruments upon which

they relied, asserted the following as a part of their title: "(5) Proof of facts and circumstances supporting and constituting a presumption that H. W. Carter transferred and assigned the Daniel Minor Certificate to William Davenport, subsequent to January 17, 1856, and prior to March 2, 1857, said instrument having been lost or misplaced." (We think the date, "March 2, 1857" is a typographical error and should be "March 20, 1857," when the certificate was located in Smith County. We will so consider it). Appellants claimed under William Davenport as their predecessor in title.

The only proof presented by appellants of facts and circumstances in support of a presumption of grant from Carter to Davenport which could possibly have any probative value are certain proceedings in a suit filed in the district court of Panola County on June 7, 1853, captioned H. W. Carter v. J. K. Williams, No. 429. In evidence are the petition, the citation, the answer, and the judgment. The petition alleges that the suit was brought by H. W. Carter "for the use of William Davenport, a resident of Smith County," to recover the Daniel Minor Certificate. The answer of Williams alleges that he holds the certificate as county surveyor of Panola County, that land in Panola County had been located by virtue of said certificate by one Joshua G. Gill, who claimed it and who refused to relinquish it, and that the plaintiff had shown no authority for his demand nor any transfer from the original grantee. On June 13, 1854, judgment was entered dismissing the suit for want of prosecution.

■ Appellants' point is that the recitals of the petition are sufficient to constitute a presumption that Davenport owned the certificate by transfer from Carter, or at least, were sufficient as circumstantial evidence to raise an issue for the jury. Viewing this evidence in the light most favorable to appellants as the losing parties, Thomas v. Postal Telegraph-Cable Co., Tex.Com.App., 65 S.W.2d 282, and indulging every inference in favor of appellants which might be drawn from it, White v. White, 141 Tex. 328, 172 S.W.2d 295, we are unable to agree with appellants' contention. "Nothing can be more clear than that, to ascertain who is the party plaintiff in a suit, we must look to the petition, and to that alone." McFadin v. MacGreal, 25 Tex. 73, 79. If we should look outside the petition there is no evidence contrary to what it shows. Looking to the petition, we find that the real party plaintiff was Davenport. Carter was but a nominal and formal party. He is not shown to have any interest in the suit nor in the matter in litigation. Any attempt to read an interest in him would be mere speculation. It is Davenport's suit, making use of Carter's name. He could have done so without Carter's knowledge or consent. McFadin v. MacGreal, supra; Dowell v. Mills, 32 Tex. 440; Galveston, H. & S. A. R. Co. v. Freeman, 57 Tex. 156; Stafford v. Harris, 82 Tex. 178, 17 S.W. 530; Bond v. Carter, Tex. Civ.App., 73 S.W. 45.

The averments of the petition being those of Davenport alone, they were self-serving and ex parte. Recitals in ancient instruments have often been held admissible, even though they were hearsay or self-serving. Magee v. Paul, 110 Tex. 470, 221 S.W. 254. But in all our decisions where we have found this rule stated, its application was to recitals in deeds or other muniments of title, or in instruments intimately related thereto, as illustrated in Brewer v. Cochran, 45 Tex.Civ.App. 179, 99 S.W. 1033, writ denied. Neither the judgment in the Panola County suit nor recital in point was a muniment of title. The judgment decided nothing in favor of Davenport. As we view it, the record in that case evidences circumstantially that Davenport did not have any right to the land certificate, if it evidences anything materially. The petition was unverified, while the answer of Williams was sworn to. The answer itself was an ancient instrument, entitled to as much verity as the petition. It completely negatived the right asserted by Davenport. With the issue thus joined, Davenport had the opportunity to prove up his claim to the land certificate. He did not do so, but apparently abandoned his suit and let it be dismissed

without prosecution after it had been pending in the district court for a year. During the pendency of the suit there was on record in the deed records of Panola County an assignment of the certificate from Niles F. Smith to H. W. Carter. It recited the chain of title from the State into Smith. If Davenport had title out of Smith or Carter, he should have been able to prove it.

Our conclusion that the proceedings in the Panola County suit do not present a jury question, and, *a fortiori*, do not support or constitute a presumption of grant from Carter to Davenport, is reinforced by the judgment of the district court of Panola County in the late suit of H. W. Carter v. James Heffner, rendered December 21, 1855. All the record we have of that suit is the judgment. It recites the true chain of title from Minor to Scott, thence to Niles F. Smith in trust for "Hamilton W. Carter." It decreed the certificate to Carter, and his attorney receipted for it on January 17, 1856. Davenport was not a party nor referred to in that suit. The judgment in the Heffner suit is a muniment of title. To hold that the proceedings in the Williams case raises so much as a set of circumstances calling for a jury issue would be to ignore or set aside and vacate the judgment in the Heffner suit.

In obvious recognition of the situation above presented, appellants' next paragraph of their abstract of title reads: "(5A) Proof of facts and circumstances supporting and constituting a presumption that *W. H. Carter* transferred and assigned the Daniel Minor Certificate to William Davenport subsequent to January 17, 1856, and prior to March 2 (March 20) 1857, said instrument having been lost or misplaced."

In other portions of the record W. H. Carter is referred to as William H. Carter, of Smith County. Appellants urge that H. W. Carter or Hamilton W. Carter, and W. H. or William H. Carter, were one and the same person. There is no direct evidence that W. H. Carter ever owned or even claimed the land certificate, or that he ever transferred or assigned it to Davenport, or that he and H. W. Carter

were one and the same person. Appellants presented a considerable quantum of record testimony upon which they rely as supporting and constituting a presumption of grant from W. H. Carter to Davenport, or, at least, as raising issues of fact based on circumstantial evidence of the facts asserted by appellants. To set out or discuss such testimony, much of which is of a minor nature, would extend this opinion unreasonably. Very considerable parts of appellants' brief of 150 printed pages, and of appellees' brief of 231 printed pages, are used in discussing these questions and the testimony relating thereto. Also, in view of other matters herein considered and of our conclusions thereon, we do not deem it essential to dwell at length on such testimony. We think the circumstances are wholly insufficient to establish a presumption of grant into or out of W. H. Carter, or into William Davenport, and that they are also insufficient to raise an issue for the jury. We are also of the opinion that the circumstances are insufficient to establish the fact or to raise a jury issue that H. W. Carter and William H. Carter were one and the same person. From the evidence presented on the foregoing matters by appellants we believe that no other verdict could find support than that rendered.

There is no evidence in the record of a claimed identity of the Carters. William H. Carter never dealt with the certificate as his own, whereas, H. W. Carter was the transferee of the certificate from Niles F. Smith, and was also the successful party in the Heffner suit over ownership of the certificate. A contract between W. H. Carter and William Davenport dated April 20, 1858,—it was not a deed,—whereby Davenport agreed to convey certain portions of the Minor Headright to W. H. Carter in consideration of services to be rendered by Carter in surveying land and securing a patent therefor, at Carter's expense, is inconsistent with a presumption that he was Hamilton W. Carter, who held written transfer of the certificate; and there is no evidence that the deeds referred to in said contract were ever executed by Davenport.

The validity of the Davenport chain appears to us to have been decided adversely to the contentions of appellants in a suit which originated in the district court of Smith County as James Denison et al. v. A. H. Swann et al., No. 3667. The suit on the part of the Thompson claim was in trespass to try title to some 610 acres of land lying in the south part of the Daniel Minor Survey. In the amended petition upon which the suit went to trial, the plaintiffs were Susie E. Thompson, widow of David Thompson, and the heirs of David Thompson. In the original petition James Denison was also a plaintiff. Among the defendants was Burrel B. Ray, ancestor of appellants here. From an adverse judgment the plaintiffs appealed and the cause was docketed in the Court of Civil Appeals as Thompson v. Swann, 35 S.W. 828. Burrell B. Ray, ancestor of appellants (elsewhere referred to also as Burl B. Ray), was an appellee in the appeal. In that suit the defendants, like the appellants here, were claiming to have deraigned title from the sovereignty of the soil down through William Davenport; in other words, under the Davenport chain. The Court of Civil Appeals reversed and remanded the case. Among other things the appellate court held that as to William H. Carter and Hamilton W. Carter there is no identity of names, hence, they were not one and the same person. See Woldert v. Skelly Oil Co., Tex.Civ.App., 202 S.W. 2d 706, 707, 708, by this court, writ refused, n. r. e. The suit was again tried in the district court of Smith County and resulted in a judgment that plaintiffs recover of the defendants, including Ray, the title and possession of the land sued for. There was no appeal from the last mentioned judgment, which was rendered March 20, 1897. Appellees here claim under the Thompson-Denison chain which was successful in that suit.

Appellants assert with much plausible argument that no part of the 200 acres here in controversy was involved in that suit. The answer of B. B. Ray alleged that his 200 acres described by him, was no part of the land sued for, disclaimed as to any outside of that which he described

in his answer, but pleaded that "in case it be ascertained by the court that any part of the 200 acres owned and claimed by *plaintiff* (defendant) * * * is included in the land sued for and described in said petition, this defendant says he is not guilty," etc. With the issue thus drawn, the court rendered judgment for the plaintiffs and against the defendants, including Burl B. Ray. A considerable amount of testimony was admitted in the present case to show that in the former case a portion of the Ray land was involved. It seems to have been offered by appellees to meet the appellants' objections that no part of the Ray land was involved, and, also to meet such objections, upon appellees' theory that the description in the judgment is ambiguous and subject to be explained by extrinsic testimony. Appellees urge that if ambiguities cannot be eliminated by resort to the usual canons of construction, then "in construing an ambiguous judgment it is always proper for the court to look to the entire record (including the citation), the pleadings, the issues made in the case, the testimony offered in support of the pleadings, the charge, the fact or facts found by the court, and other proceedings leading up to the judgment." 25 Tex.Jur. p. 461. This rule finds support in numerous Texas decisions, among them Snell v. Knowles, Tex.Civ.App., 87 S.W.2d 871, by this court; Dearing v. City of Port Neches, Tex.Civ.App., 65 S.W.2d 1105; Sharp v. Womack, 132 Tex. 507, 125 S.W.2d 270; Milner v. Schaefer, Tex.Civ.App., 211 S. W.2d 600, error refused, and authorities cited in said decisions. In Permian Oil Co. v. Smith, 129 Tex. 413, 107 S.W.2d 564, 580, 111 A.L.R. 1175, Chief Justice Cureton said: "Indeed, not only is it true that the whole record may be examined in interpreting an ambiguous judgment, but evidence outside the record, even parol, is admissible to show for what the judgment was recovered, 'what was the real cause of action' ", citing numerous cases.

■ The judgment in the Thompson-Denison-Swann case involves a finding that at least a part of the Ray 200 acres of land was included in the land sued for, and that that issue was directly in controversy in

the suit. Since the evidence on that trial was not available on the trial of this case, we must presume that the court which rendered the judgment of March 20, 1897, by legal and competent evidence "ascertained" that at least a part of Ray's 200 acres was included, and because of that fact he gave judgment against Ray. The judgment possesses such verity, and it is not now subject to appellants' collateral attack. The judgment would not be void because of ambiguity in its description. Authorities last above. The land actually adjudicated could be and was made certain by the extrinsic evidence introduced by appellees for that purpose, and shows that a part of the land now in controversy was included in said adjudication.

■ Now, what is the impact of that judgment in this case? The Minor Survey, or at least some 1,230 acres of it, had been partitioned between James Denison and David Thompson, by deeds passing between them. Thompson's part, 610 acres, lay in the south part of the survey. Appellees have a straight chain of title from Thompson and Denison. "The defendants (in the Thompson-Swann case) deraigned title from one William Davenport down to themselves." Thompson v. Swann, supra. The present suit specifically challenges the Thompson and Denison titles, and their heirs and unknown heirs are made parties defendant. The controlling issue in both suits was and is the question of the superiority of the Thompson and Denison chain of title over the Davenport chain, or vice versa. In 26 Tex.Jur., p. 214, Sec. 453, it is stated: "It is a fundamental principle of law that a party to a suit is bound by the judgment rendered therein whether he was a willing plaintiff or an unwilling defendant, or merely an intervener seeking to protect his interest in the subject matter, unless, of course, he was dismissed therefrom, or withdrew his plea in intervention prior to rendition of the judgment."

■ Not only are the parties to a judgment bound, but those in privity with them. "Thus, a judgment divesting the title of land out of the defendant, * * *

is as binding upon a subsequent purchaser from the defendant as upon the defendant himself." 26 Tex.Jur., pp. 235–236, Sec. 462. Privity exists between a party to a judgment and his or her surviving wife or husband, 26 Tex.Jur., p. 249, Sec. 468, and his heirs at law, Id., p. 256, Sec. 472.

The Supreme Court of the United States, in the famous case of State of Oklahoma v. State of Texas, 256 U.S. 70, 41 S.Ct. 420, 422, 65 L.Ed. 831, said: "A question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense in a suit or action between parties sui juris is conclusively settled by the final judgment or decree therein so that it cannot be further litigated in a subsequent suit between the same parties or their privies whether the second suit be for the same or a different cause of action." See 26 Tex.Jur. 12.

In Stephenson v. Miller-Link Lumber Co., 277 S.W. 1039, 1040, the Commission of Appeals said: "Any right, fact, or matter in issue and directly adjudicated upon, or necessarily involved in the determination of an action before a competent court in which the final judgment or decree is rendered upon the litigation is conclusively settled by that judgment or decree as between the same parties, and cannot again be litigated, whether the claim, demand, purpose, or subject-matter of the two suits is the same or not." Many authorities are cited in 26 Tex.Jur., pp. 12–13, and many recent cases in Vol. 6 Tex.Jur.Supp., pp. 602–604.

■ The doctrine of res judicata may arise out of either of two situations. It may be a complete bar when the first suit was based on the same claim or demand as the second. Or, it may arise as an estoppel by judgment "when the first suit was not based upon the same claim or demand as the second, but nevertheless involved the determination of some matter that is in issue therein." 26 Tex.Jur., p. 15, Sec. 354; Hanrick v. Gurley, 93 Tex. 458, 54 S.W. 347, 55 S.W. 119, 56 S.W. 330. Special Associate Justice Fouts, in Permian Oil Co. v. Smith, supra, said: "The other type [estop-

pel by judgment] is encountered where the parties to a subsequent suit seek to relitigate an issue which was disposed of by final judgment in a former suit to which they were parties, although the cause of action may have involved other issues. In the latter instance it has been said the parties and their privies are estopped to try again such issue disposed of by the former judgment and the entire record in the first case is admissible in evidence in order to determine whether or not the issue involved in the second case was actually disposed of in the first, without reference to the question of ambiguity." In Mayfield Co. v. Rushing, 133 Tex. 120, 127 S.W.2d 185, 187, 124 A.L. R. 1210, opinion approved by Supreme Court, it is said: "It is elementary that if in a former suit an issue which goes to the foundation and existence of a cause of action has been litigated, such issue cannot be again litigated in a later suit, regardless of the form it may take."

It is not essential that the land involved in both suits should be identical. Carter v. Bacle, Tex.Civ.App., 94 S.W.2d 817, 821, by this court, writ dismissed. Nor need the parties be identical. In the case last cited the rule is applied to the facts of that case by Chief Justice Johnson, as follows: "Nor is the fact that some of the present appellees, grantees of Arrenva Green Bacle, surviving wife of H. G. Green, and grantees of the children and heirs of H. G. Green, deceased, were not parties to the former suit does not deprive them of the plea, since their grantors or lessors were parties to the former suit and are parties to this suit."

■ The judgment of March 20, 1897, and the record presented leave no question but that the respective titles here involved were litigated in that case. The claimed ambiguity in the description cannot affect the conclusiveness of the judgment on the issues so litigated. Permian Oil Co. v. Smith, supra. In addition, the question, to our minds, is settled by the provisions of Art. 7391, R.S. of Texas, as follows: "Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action." For reasons discussed appellants' points one, four, and seventeen are respectfully overruled.

■ The matters remaining to be considered relate to appellees' pleas under the several statutes of limitation. It is well settled in this state that any title acquired by plaintiffs, either by record or by adverse possession, may be superseded by the defendants' adverse possession. Lion Oil Refining Co. v. White, Tex.Civ.App., 138 S.W.2d 290; McMurrey Corporation v. Shell Oil Co., Tex.Civ.App., 173 S.W.2d 354, error denied; Noble v. Cooke, Tex. Civ.App., 253 S.W.2d 911, writ refused, n. r. e. Appellees' title traces back to Niles H. Smith, whose power of attorney to W. R. Leonard dated January 3, 1874, recorded in Smith County January 9, 1874, recites him to be the sole heir of Niles F. Smith. The Smith title to 1,230 acres of the Minor Survey, which includes the 200 acres in controversy, vested in David Thompson and James Denison, by deed from Leonard as attorney in fact for Niles H. Smith on May 8, 1876, recorded in Smith County deed records May 23, 1876. It has already been stated that Thompson and Denison partitioned the land, Thompson acquiring the south part of the Minor Survey, about 610 acres, but not including the Elias Jones tract of 150 acres in the southwest part. The Thompson and Denison titles passed by mesne conveyances to appellees as to the land in controversy.

Possession under the Thompson-Denison chain appears to have begun at least as early as 1898. Virge Tate as a tenant of respective owners thereunder lived on the land until his death, some eight or ten years before this trial. About 1916 or 1917, Judge R. W. Simpson of Tyler was looking after the land for James Lyons, its then apparent owner under appellees' chain. The land was used for pasturage under agreements with Judge Simpson, acting for Lyons. Fences were built sufficient to contain the cattle. This pasturage included the land in suit. In 1921, Judge Gordon Simpson, son of Judge R. W. Simpson, was placed in charge of the Lyons land by its owners.

He looked after it until 1930, going on the land at least twice a year. He made contracts for cultivation and other work. Timber was sold, cut and removed at instance of owners. The evidence shows that the possession of tenants was not restricted to specific areas. Contracts were made with various persons as tenants with provisions that if and when they had paid as rent certain sums, deeds would be executed to them. One such contract was with Ben Campbell, about December 1, 1918. He was in possession of the part so contracted until he moved away in 1936. Another such contract was with Roy Gardner, made about 1919. He continued in possession of the part so contracted until he received a deed to the surface on July 8, 1943. It is our belief that such contracts created a tenancy relationship to the owner until the deed was executed. Wright v. Giles, 60 Tex.Civ.App. 550, 129 S.W. 1163, error refused.

Such acts of dominion over the Thompson-Lyons land by appellees and their predecessors in title continued to the time of this suit and trial. It consisted of many detailed acts which are too extensive to enumerate. Such possession was open, visible and adverse, and was held by appellees and their predecessors in title under the Niles H. Smith deed and all other deeds, all duly recorded in Smith County. So far as possession is concerned by appellees and their predecessors in title, the evidence is amply sufficient to meet the requirements under the five, ten and twenty-five year statutes of limitation.

The evidence also shows that appellees and those under whom they hold have paid taxes on the land annually before delinquency for every year since 1898 except for the year 1900.

No possession nor dominion by appellants or their predecessors in title was shown in evidence. The record is rather fragmentary as to B. B. Ray's payment of taxes. It is not entirely clear that he paid taxes annually as they became due on the land from 1891 to 1897. However, there is some evidence to that effect and we indulge the inference that he paid such taxes. We think the evidence shows that he did not pay taxes on the 200 acres for 1897. After the final judgment in the district court in the Denison-Swann suit, March 20, 1897, Ray did not render nor pay taxes on the land. None of appellants rendered or paid taxes on said land, except that on July 12, 1948, three days before this suit was filed, one of appellants paid taxes for the year 1927. Such taxes, however, had already been rendered and paid before delinquency by appellees or persons under whom they hold.

Following the death of Sarah Ann Ray, January 24, 1899, B. B. Ray, her surviving husband, applied for and was granted community administration on their estate by the county judge of Smith County. The inventory filed by the survivor listed four acres of land in the town of Lindale, which the evidence showed was the homestead. The land in controversy was not inventoried as a part of the community estate, although Ray and Sarah Ann were married at the time he acquired this land by deed from Hynson. B. B. Ray died later in 1899, without will, and there was no administration on his estate.

The evidence shows that some of appellants, heirs of B. B. and Sarah Ann Ray, have lived for many years in the vicinity of this land, as did ancestors of some of appellants. They knew of the land but never made a claim to it until about the time this suit was brought. Some of them lived on land adjacent to the 200 acres. Burl B. Ray, grandson of the original B. B. Ray, in admitting that he had asserted no claim to the land before suit, testified that "they have taken it away from my grandfather and I figured that was all right, maybe"; "I did not know who took it away from him, but somebody did"; "I just understood that it was taken away from him." He and other appellants testified that, so far as they knew, none of the heirs had asserted any claim to the land until about the time of the suit. While he had not lived in Smith County for many years, his testimony seemed to express the attitude of all the appellants.

The record is without dispute that for approximately fifty years neither the original B. B. Ray nor any of his heirs at law asserted any claim to the land in suit. For a like period of time they paid no taxes on the

land except as stated. Obviously they considered that the final judgment in the Thompson-Swann case in the district court of Smith County, March 20, 1897, divested B. B. Ray of any title he might have had, as, indeed, we think it did, and from that time they abandoned all claim to the land. During those years the appellees and their predecessors in title were the apparent owners, in possession and exercising dominion, and paying all taxes on the land annually before delinquency except as already stated. They held under deeds duly recorded.

The evidence is not susceptible of any other inference than that B. B. Ray and others who succeeded to any title he might have had, acquiesced in the adverse possession of appellees and their predecessors. In this state of the record we think the rule stated in Magee v. Paul, 110 Tex. 470, 221 S.W. 254, 256, is controlling: "Since it is not consistent with human experience for one really owning property of value to assert no claim thereto, but to acquiesce for a long period of time in an unfounded, hostile claim, the rule is sound which permits the inference that an apparent owner has parted with his title from evidence, first, of a long-asserted and open claim, adverse to that of the apparent owner; second, of nonclaim by the apparent owner; and third, of acquiescence by the apparent owner in the adverse claim." See also Price v. Humble Oil & Refining Co.; Tex.Civ.App., 152 S.W.2d 804; Love v. Eastham, 137 Tex. 462, 154 S.W.2d 623; Baldwin v. Goldfrank, 88 Tex. 249, 31 S.W. 1064.

In stating the foregoing facts and conclusions we have adhered to the familiar rule that the possession of tenants is the possession of the landlord. Appellants urge, however, that in such cases the possession of the landlord through the tenant does not extend beyond the boundaries of the tract enclosed, cultivated or occupied by them. Appellants rely upon Read v. Allen, 63 Tex. 154, which seems to so hold. See also Texas Land Co. v. Williams, 51 Tex. 51, 61; Craig v. Cartwright, 65 Tex. 413. But Read v. Allen, we think, was rejected by Bowles v. Brice, 66 Tex. 724, 2 S.W. 729.

It has been further rejected in the following cases: Puryear v. Friery, 16 Tex.Civ. App. 316, 40 S.W. 446, writ refused; Haynes v. Texas & N. O. Ry. Co., 51 Tex. Civ.App. 49, 111 S.W. 427, writ refused; Nunn v. Peavy, Tex.Civ.App., 286 S.W. 909, error refused; Cook v. Easterling, Tex. Com.App., 290 S.W. 731; Harris v. Wood County Cotton Oil Co., Tex.Civ.App., 222 S.W.2d 331, writ refused, n. r. e. The rule adhered to in the cases last cited is that, where "the improved part of the tract is rented for the purpose of cultivation, without affirmative restrictions upon the tenant as to the remainder. * * * that actual possession of a part by the claimant, through his tenant, extends the statute to the boundaries shown in the recorded deed under which the claim is made * * *. We think this is the general rule as to the effect of possession by a tenant, and that the burden is upon the one who claims differently to show that in his case the landlord's possession should be restricted, on account of his lease, to a less area." Parker v. Cockrell, Tex.Civ.App., 31 S.W. 221, 222. There is no evidence of such restriction, on the contrary it affirmatively appears that tenants were not so restricted, and were allowed the use of any land not already contracted for.

As already stated, possession by appellants or of those under whom they claim was not shown. Their petition alleges possession in the defendants sued. The plea of not guilty in a trespass to try title suit admits that the defendants have possession and asserts a better title than plaintiffs have. The evidence shows possession by appellees. Possession imports title until the contrary is proved. Appellants have failed to show title in themselves, or to overcome the presumption of title in appellees arising from their possession.

What we have said,—at length to be deplored,—disposes of the vital questions raised on this appeal. We have considered all assignments but are of the opinion that no question is presented calling for a reversal of the trial court's judgment. Accordingly, all points raised are overruled, and the judgment is affirmed.

The briefs by the attorneys have aided us very much in our review of this case. They are models of clarity and precision, and evidence prodigious labors in preparation and trial, and in presentation to this court. We express appreciation to counsel, and to the distinguished jurist who presided at the trial for a difficult task so well performed.