| 61 | 81 |
|----|----|
| 81 | 208 |

| 61 | 81 |
|----|----|
| 82 | 415 |

---

SAMUEL G. EVITTS v. JOSEPH ROTH ET AL.

(Case No. 1737.)

1. POSSESSION — LIMITATION.— One in possession of land improved and inclosed holds to the extent of his inclosure by actual possession; and if his possession is under a deed, he holds outside of his actual possession by constructive possession to the extent of the boundaries described in his deed.

2. CONFLICTING SURVEYS — LIMITATION.— When there is a partial conflict of surveys and both parties are in possession of their respective surveys, he who claims under the title junior in point of time cannot avail himself of limitation as to the conflict beyond the limits of his inclosure.

---

Statement of the case.

---

3. LIMITATION — CONSTRUCTIVE POSSESSION.— On the entry of the true owner upon any part of his land the constructive possession of an adverse claimant, in actual possession of some portion of it, ceases as to uninclosed land.

4. REGISTRATION — PATENTS — NOTICE — STATUTE CONSTRUED.— Though patents to land are admitted to record, there is no law requiring them to be recorded in the county where the land is situate. They are not embraced within the meaning of art. 4988, Pasch. Dig., which declares deeds to be void as to creditors and subsequent purchasers without notice unless they shall have been acknowledged or proved and lodged with the clerk for record. The record of a patent in the general land office is notice to the world of its existence.

5. COPIES.— Certified copies are only admissible when the records themselves are admissible in evidence.

6. NOTICE.— Until the issuance of patents locators of land were only required to look to the records of the surveyor's office; the mere fact that the field notes were deposited in the general land office is not constructive notice of the appropriation of the land.

APPEAL from Wise. Tried below before the Hon. C. C. Potter.

December 8, 1877, appellant brought trespass to try title against appellees, except Herndon and Hood, to recover the land described in the petition, claiming title by virtue of a patent issued to him May 10, 1856.

Appellees claimed the land through a patent issued to Jacob J. Gholson, July 23, 1856, and mesne conveyance to them, relied upon the three years' statute of limitations, and averred that, at the time the Gholson certificate was located, there was no evidence in the surveyor's office of any appropriation of the land by Evitts; that he had no notice in fact of any such appropriation, and that the Gholson certificate was located in good faith, and without any notice of the Evitts location. They also claimed to be innocent purchasers, because Evitts had failed to have his patent recorded in Wise county prior to their respective purchases. The appellees set forth their respective claims by metes and bounds; and also suggested improvements in good faith. Herndon and Hood made themselves defendants as warrantors of the other appellees. Whereupon appellant replied, asking judgment against Herndon for whatever claim he had to the land. The land was on a conflict between the Evitts and Gholson surveys, and amounted to near six hundred acres.

The jury returned the following verdict, to wit:

"SAMUEL G. EVITTS  ⎫
    641    v.      ⎬
"JOSEPH ROTH et al. ⎭

"We, the jury, find for the defendants, Joseph Roth and the Middleton heirs, their land in controversy, by statute of limitation.

We further find for the defendant, Mary E. Stewart, her improvements to the value of $750, exclusive of rent, and value her land, without improvements, at $3 per acre — $444. We find for the plaintiff the remainder of the land in controversy.

(Signed)                          " C. C. HAWKINS,

"Foreman of the Jury."

Judgment in accordance with the verdict; after which Mrs. Stewart entered a *remittitur* of $250.

The several errors relied upon by the different parties are sufficiently noticed in the opinion.

*A. M. Carter*, for appellant, cited: Bryan *v.* Crump, 55 Tex., 1; Scanlan & Lacy *v.* Brunneman (MSS.), decided at Austin, 1883; Peyton *v.* Barton, 53 Tex., 302; Hunnicutt *v.* Peyton, 102 U. S., 368; Bunton *v.* Cardwell, 53 Tex., 408.

*Walton & Hill*, also for appellant.

*W. S. Herendon, J. J. Jarvis* and *A. J. Hood*, for appellees, cited: R. S., art. 3191; Horton *v.* Crawford, 10 Tex., 382; Marsh *v.* Weir, 21 Tex., 109, 110; Smith *v.* Power, 23 Tex., 34; Pasch. Dig., art. 462, note 1031; Cresty *v.* Alford, 17 How., 603; Simpson *v.* Chapman, 45 Tex., 564; Ayres *v.* Duprey, 27 Tex., 594; Blankenship *v.* Douglas, 26 Tex., 225; 49 Tex., 481, 484; 24 Tex., 417; Gilbeau *v.* Mays, 15 Tex., 416; Lewis *v.* Durst, 10 Tex., 415; 29 Tex., 222; Fletcher *v.* Peck, 3 Curtis, 337; Story's Eq. Jur., vol. 1, arts. 409, 410; Hart. Dig., arts. 2754, 2756, under act of 1836; also Hart. Dig., arts. 2784 and 2789, under act of July, 1846; McClelland *v.* Moore, 48 Tex., 361; Peterson *v.* Lowry, 48 Tex., 411; 11 Tex., 93; 15 Tex., 415; Hart. Dig., arts. 2770–2776; id., arts. 1843, 4279–4281.

WATTS, J. COM. APP.— Upon the issue of limitations the court instructed the jury to find for certain of the appellees if they had been in possession of the land for three years when this suit was instituted; and refused to charge, at the request of appellant, that Evitts' entry upon his survey disseized the appellees, except to the land they had inclosed.

Assuming that the Evitts patent is in law, as in fact, the older, and vests in him the superior title, which will be considered hereafter, then the charge as given did not announce correctly the legal principle involved.

"It is well settled that a party in possession, with improvements and inclosure, holds to the extent of his inclosure by what is termed

actual possession; and if at the same time he holds under deed or title, he holds to the extent of the boundaries of his deed or title, outside of his actual possession, by what is termed constructive possession." Cunningham v. Frandtzen, 26 Tex., 38.

The appellees claimed under the Gholson patent by deeds describing their respective tracts by metes and bounds. To the extent of their respective inclosures they were each in the actual possession, but as to the land included in the boundaries defined in their respective deeds, and which was not in their respective inclosures, they had only a constructive possession.

This doctrine is well stated in Wood on Limitation of Actions, sec. 259, as follows: "But where a person goes into possession under color of title, duly recorded, in which the boundaries of the lot are defined, this operates as constructive notice to all the world of his claim, and also of its extent, so that not only does a sufficient occupancy of part of the lot carry with it, by construction, the possession of the entire premises conveyed and described in the deed, but also dispenses with the rule as to *pedis possessio*, and only requires from him such an occupancy as the nature and character of the premises admits of."

In section 261 of the same work it is said: "The rule is that when there is a mixed possession — that is, when there are two or more persons in possession each under a separate conveyance or color of title,— the possession will be treated as being in him who has the better title, upon the ground that the seizin is in him who has the best title; and, as all cannot be seized, the possession follows the title. The rule is well settled that title draws to it the possession, and it remains with the owner of the legal title until he is divested of it by an actual adverse possession; and while he is in possession of a part of the premises, his possession is entitled to the constructive possession, and can only be ousted by and to the extent of the actual occupation of a mere intruder."

While there may be a mixed possession of land, there can be no such thing as a concurrence of seizin. For, as said in Whitehead v. Foley, 28 Tex., 289, the legal title draws to the owner the seizin and possession, and he retains them until disseized by an actual possession taken and held by another.

In Hunnicutt v. Peyton, 102 U. S., 333, it was held that where a party enters upon unoccupied land, under color of title, and holds the same adversely, his holding will extend to the land included within the boundaries defined by his deed, and to that extent the real owner is disseized. But if the real owner is on any part of the

land, his constructive seizin extends to all the land not in fact occupied by the other.

The principle that to the rightful owner belongs the constructive possession, and all others as against him are confined to their actual possession, is well established by many adjudicated cases. Among them are the following: Codman *v.* Winslow, 10 Mass., 146; Stevenson *v.* Hollister, 18 Vt., 294; Whittington *v.* Wright, 9 Ga., 23; Hodges *v.* Eddy, 38 Vt., 345.

As was held in Robinson *v.* Lake, 14 Iowa, 424, to disseize the true owner, who is in possession or occupancy of any portion of the tract, of any part of his land, the occupation must· be actual, visible, notorious, distinct and hostile.

In Peyton *v.* Barton, 53 Tex., 303, it is said: "The great current of authority, however, is that when there is only a partial conflict or interference of surveys, the statute will not run in favor of an adverse occupant under a junior title, if his possession does not extend to that part of the land in dispute which is in the conflict."

Where there is a partial conflict of surveys, and both parties are in the occupancy of their respective surveys, the one claiming under the junior title cannot avail himself of the defense of limitations as to the conflict beyond the limits of his inclosure. Gittner *v.* Waters, Tex. Law Journal, vol. 4, p. 717.

Evitts was not in the occupancy of any part of his survey at the time the appellees entered; therefore their actual possession extended to the land actually inclosed, which carried with it the constructive possession of the balance of the land within the boundaries contained in their respective deeds. This possession would support the defense of three years' limitation for all the land contained in their respective deeds, provided such possession continued uninterrupted for the full term.

But upon the entry of the true owner upon any part of his survey the constructive possession and seizin belonged to him. As to the non-inclosed land included in their title deeds, Evitts' entry would effectually interrupt their constructive possession. For he claimed to the full extent of his boundary; they claimed to the extent of theirs; and his being the real title, carried the seizin and constructive possession to all the land embraced within his survey not in the actual occupancy of appellees. Any other doctrine would lead to the absurdity, that, without regard to the real title, to the party who first entered would belong and continue to belong the seizin and constructive possession to the extent of the boundaries defined in his title papers.

The charge, in placing the limit at the time the suit was commenced, instead of the time of Evitts' entry, as to the land not inclosed by appellees, was error. But as the evidence clearly shows that the three years had expired long before Evitts entered upon the survey, this was an immaterial error.

Appellant's third assignment of error is well taken. The court instructed the jury to estimate the value of the use and occupation of the land, exclusive of the improvements made thereon by the appellees; while if the appellant was entitled to recover the land, he was also entitled to a recovery for the rents on the improvements as well as the land. Evetts v. Tendick, 44 Tex., 572.

There is nothing in the objection that the judgment fails to award to appellant all the land to which he was entitled by the verdict. The effect of the circuitous description contained in the judgment was to give him all the land in the conflict except that recovered by appellees Roth and the Middleton heirs.

It is claimed by those of the appellees who filed an appeal bond and otherwise perfected a cross appeal, that they were innocent purchasers, because Evitts had failed to have his patent recorded in Wise county prior to their respective purchases.

While patents are admitted to record, there is no law that requires them to be recorded in the county where the land is situated. Patents and grants from the government are neither embraced within the language nor spirit of article 4988, Paschal's Digest, which declares deeds and other instruments void, as against creditors and subsequent purchasers without notice, unless they shall have been acknowledged or proved and lodged with the clerk for record.

Art. 4980 of Paschal's Digest, cited as sustaining the proposition, is section 37 of the act of December 20, 1836, and had reference solely to instruments then in existence. A patent is notice to the world; the record of it is in the general land office.

These parties also insist that the court erred in admitting as evidence the transcribed record book of field notes from the surveyor's office over their objections. Certified copies are only admissible where the records themselves would be admissible. R. S., art. 2252; Pasch. Dig., 3715.

Certified copies from such records are provided for as a matter of convenience. The custodian could not be expected to provide the original record books in any of the courts of the state where they might be needed as evidence; hence the statute provides that copies duly certified shall be admissible. But where the original record is properly produced, there is no reason why it should not be admitted.

These parties set up in their answer that at the time the Gholson certificate was located upon the land there was nothing in the surveyor's office showing that any part of the land had been appropriated by the Evitts certificate, and there were no marked lines and corners to indicate that the land had been surveyed.

Neither the certified copy of the field notes of the Evitts survey nor the record book of surveys showed when these field notes were recorded in the surveyor's office. Boone, who located the Gholson certificate, testifies that he did so in October or November, 1855; he had examined the books and maps in the surveyor's office, and failed to find any record or other evidence that the land had been previously appropriated; that he was with the surveyor at the time the Gholson survey was made; that there were no marked lines, etc., showing the Evitts survey, notwithstanding it was all timbered land; and that he had no notice whatever at the time that the land had been previously appropriated.

To constitute notice of the appropriation of public land, the law then provided that the locator should have his file properly entered in the surveyor's office, so designating the land that subsequent locators might ascertain from an examination thereof that the particular land had been appropriated. Until the issuance of patent subsequent locators are only required to look to the records of the surveyor's office; and the mere fact that field notes are deposited in the general land office is not constructive notice of an appropriation of the land.

In contests between those claiming under different patents for the same land, the burden is not only upon those claiming under the junior patent to establish that the patentee had an equity in the land at the time of the issuance of the senior patent, but, as a general rule, also that such equity was older than those which had culminated in the senior patent. Rutherford v. Ranch, Tex. Law Journal, vol. 4, p. 798.

But if, in fact, Boone was acting for Gholson in locating his certificate, and if there was no file or other record of evidence in the surveyor's office of Evitts' location, and Boone, in fact, had no such notice, then it would follow as an indisputable proposition that Gholson and his vendees would have the superior right to the land. The court should have submitted that issue to the jury.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted February 11, 1884.]