### COOK v. EASTERLING et al.
#### (No. 890–4171).

(Commission of Appeals of Texas, Section A. Jan. 26, 1927.)

**1. Adverse possession ⬡100(1)—Actual occupation is required to oust owner from constructive seizin of unoccupied portion of land, where he occupies part thereof.**

Owner of land in actual possession of part thereof is deemed to have constructive seizin of all that portion of tract of which he is not in actual possession, and can be ousted from such constructive seizin only by actual occupation.

**2. Adverse possession ⬡102 — Constructive possession of unoccupied land by adverse claimant held not precluded by owner's lease by metes and bounds.**

Landowner, leasing part of land to tenants by metes and bounds, thereby restricting their possession to such part, who does not have actual possession of any part of land, has no constructive seizin of unoccupied balance which would preclude constructive possession by adverse claimant.

**3. Adverse possession ⬡102 — Landowner, contracting to allow another to take sand from sand pit, had constructive possession of entire tract requiring actual occupation by adverse claimant to oust it.**

Owner of 2,578 acres *held* to have constructive possession of entire tract, requiring actual occupation by adverse claimant to oust it, where it contracted to allow another to take sand from sand pit without expressly restricting right of possession to any portion of land and such other built houses for workmen, since possession of latter had same effect as possession by owner.

**4. Adverse possession ⬡102—Owner's actual possession taken by leasing part of land to another without restriction as to remainder extends to whole tract.**

Where owner of tract of land rents improved portion to another for purpose of cultivation or grants right of occupying and using portion of land with no affirmative restriction on tenant as to remainder, owner's actual possession thus taken extends to boundaries of whole tract.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by E. E. Easterling and others against J. H. Cook. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (259 S. W. 1089), and defendant brings error. Affirmed.

Jas. A. Harrison, of Beaumont, for plaintiff in error.

W. D. Gordon, Thos. J. Baten, and E. E. Easterling, all of Beaumont, for defendants in error.

BISHOP, J. This is a suit in trespass to try title to 160 acres of land on the Charles A. Felder league in Hardin county, Tex., instituted by the defendants in error against J. H. Cook, plaintiff in error. In his answer Cook set up claim to the land under the 10 years' statute of limitations. The 160 acres sued for is part of a tract of 2,578 acres, and the suit was tried in the district court under an agreement as follows:

"It is agreed for the purpose of this record that plaintiffs introduced in evidence title papers showing that they have record title to the north 2,578 acres of the Charles A. Felder league in Hardin county, Tex., in which portion the 160 acres in controversy is located, and that plaintiffs are entitled to recover in this action, unless defendant, J. H. Cook, has acquired title by limitation to the 160 acres in controversy."

There was testimony introduced by Cook in support of his plea of limitation to the effect that in the early part of the year 1902 one J. R. Coleman entered upon the 160 acres and built a house of logs, in which he and his wife and children lived continuously as their home until they sold the land to Cook by deed of date November 11, 1912; that Coleman inclosed about one acre, including the land upon which the house was situated, with a fence, and also fenced a small garden which he cultivated for one or two years; that he measured off the land and claimed during all of this time this 160 acres, saying that he intended to hold same for a home; and that during the time he and his family lived in the house he was engaged in hunting, fishing, trapping, raising hogs, and working for others.

The defendants in error introduced in evidence the deposition of Coleman and his wife

to the effect that neither ever claimed this land and that their occupation was not continuous. Defendants in error also introduced in evidence the following contract:

"State of Texas, County of Harris.

"This contract this day made and entered into by and between the Houston Oil Company of Texas, a corporation duly organized and doing business under the laws of the state of Texas, hereinafter styled first party, and Texas Builders' Supply Company, with headquarters at Beaumont in Jefferson county, Tex., hereinafter styled second party, witnesseth as follows, to wit:

"That whereas, first party is the owner of a certain sand pit at the station of Fletcher in Hardin county, Tex., on the line of the Gulf, Beaumont & Kansas City Railway Company, said pit being known as pit F, and is willing to sell sand out of said pit to second party, and second party is desirous of purchasing sand from said pit of first party, under the terms of this contract;

"Now, therefore, the parties hereby agree between themselves as follows, to wit:

"(1) First party hereby agrees to sell to second party sand out of said pit F at two and 25/100 ($2.25) dollars for each coal car, and one and 25/100 ($1.25) for each flat car; and said sand shall be mined and loaded at the expense of second party.

"(2) Second party shall take and pay for at least fifty ($50.00) dollars worth of sand at the rates aforesaid for each month; and if during any month second party fails to load and haul as much as $50.00 worth of sand at the rates aforesaid, second party shall nevertheless pay first party the sum of $50.00 on the 5th day of the following month; but in that event second party shall have the right to load and haul out during any succeeding month enough sand to cover the shortage of any preceding month; and it further provided that second party shall have the right to purchase, load, and haul out from said sand pit F as much sand as they may desire during the life of this contract; and any excess above $50.00 worth at the rates aforesaid which second party may load and haul during any month shall be paid for not later than the 5th day of the next following month at the rates aforesaid.

"(3) It is understood that during the life of this contract second party shall have the exclusive right to load and haul sand out of the said pit F, with the exception that the Kirby Lumber Company has the concurrent right to haul all the sand from said pit F, which may be desired by said Kirby Lumber Company for its own use; and the second party hereby agrees that it will load and ship for the Kirby Lumber Company all sand it may desire for its own use from said pit F during the life of this contract and charge the Kirby Lumber Company therefor for loading and superintendency not exceeding $4.00 per coal car and $2.00 per flat car, or including cost of sand $6.25 per coal car, and $3.25 per flat car.

"(4) It is hereby expressly agreed that either party hereto may terminate this contract at any time by giving the other party thirty days' written notice.

"In testimony whereof, witness the hands of the parties hereto in duplicate originals this the 16th day of October, A. D. 1902. Houston Oil Company of Texas, per F. A. Helbig, Asst. Secy. Texas Builders' Supply Company, per M. F. Parker, Pres."

Defendants in error hold title to the 2,578 acres of land under the Houston Oil Company of Texas. The evidence shows that this sand pit, which at the time of the trial was some 5 or 6 acres in size, is on the 2,578 acres of land about 6 miles from where Coleman built his house. Under this contract the Texas Builders' Supply Company, in the year 1902, began to remove sand in carload quantities from this pit. A side track was built from the railroad to the pit and two houses were built upon the 2,578 acres of land near the pit by the supply company, in which its employees lived while engaged in removing sand. From 1902 to 1913 the supply company was engaged in taking the sand from this pit under its contract with the Houston Oil Company of Texas.

In the district court verdict was instructed for defendants in error, and judgment rendered thereon. Cook appealed, and the Court of Civil Appeals affirmed the judgment, holding that, though the evidence would otherwise present an issue of fact on the issue tendered by Cook's plea of limitations, it did not do so in this case, for the reason that the possession of the supply company gave to the Houston Oil Company of Texas such constructive possession of the unoccupied portion of the 2,578 acres of land as would prevent Coleman from perfecting title thereto under the 10 years' statute of limitations.

[1, 2] The owner of a tract of land who is in actual possession of only part thereof is deemed to have constructive seizin of all that portion of the tract of which he is not in actual possession, and can only be ousted from such constructive seizin or possession by and to the extent of the actual occupation of an adverse claimant or intruder. Evitts v. Roth, 61 Tex. 81. Should such owner sell that portion of the tract of which he had actual possession, such constructive seizin of the land not occupied would no longer exist (Cunningham v. Frandtzen, 26 Tex. 34), and an adverse claimant under our statute of 10 years' limitations holding actual possession could therefore have constructive possession of land of which such claimant did not hold actual possession. If the owner leases to a tenant by metes and bounds a part only of his land, thereby restricting the tenant's possession under the lease to such part, and does not have actual possession of any of the balance of the tract, he does not have such constructive seizin of an unoccupied balance as would prevent an adverse claimant in actual possession of a portion of the balance from claiming constructive possession of such unoccupied portion under the provisions of our statutes of limitations. Texas Land Co. v. Williams,

51 Tex. 51; Read v. Allen, 63 Tex. 154; Craig v. Cartwright, 65 Tex. 424.

[3] Defendants in error held title to the 2,578 acres of land under the Houston Oil Company. The contract above quoted between the Oil Company and the Texas Builders' Supply Company was a mineral lease giving the right of entry and possession for the purpose of taking sand from pit F during the term of the lease contract, which could be terminated by either party giving to the other 30 days' notice. This right of possession was not, by the terms of the contract, restricted to any portion of the 2,578-acre tract, and the possession held by the supply company under the contract was the possession of the Houston Oil Company of Texas.

In the case of Texas Land Co. v. Williams, supra, it seems clear that it was the intention of the owner of the large tract of land, when he obtained leases from those who were living on it at the time it was acquired, to protect himself against the possibility of adverse claims by these parties, and it was the intention of the parties that their possession was to be confined to the tracts actually occupied by them. The court makes a direct finding that the possession of the tenants was actually limited to the parts of the land occupied by them, and the holding of the court is summarized in this language:

" 'If plaintiff only had possession by tenants, and each of said tenants had possession of a separate and distinct portion of the 11-league grant sued for by plaintiff, such partial possession does not constitute actual possession of the whole grant, but is confined to the portion of the land leased or occupied.' "

In the case of Read v. Allen, supra, the terms of the lease are not disclosed. However, the language of the opinion indicates that it must have been one which affirmatively showed that it was not the intention of the parties to have the tenant's possession extend to the whole tract. The holding of the court upon this question is indicated by the following language:

"We cannot perceive upon what ground a landlord, who, by a lease, has restricted the possession and use of his tenant by metes and bounds to a part of a larger tract, can claim that his tenant's possession under such a lease extends to that which, by the terms of the lease, the tenant has no right to possess."

In the case of Craig v. Cartwright, supra, it is held:

"It appears, however, that the possession of this tenant, and his right to possession, were restricted to land which he had inclosed, and it does not appear that such possession extended to any of the land claimed by the appellant under his plea of limitation."

[4] It is but right that there should be a well-recognized distinction between leases or acknowledgments of tenancy which are taken by a landowner for the purpose of protecting his title against adverse claim on the part of the one in possession, and when it is apparent that the parties had no intention that the tenant should hold possession of the entire survey for the use and benefit of the owner, and those leases or tenancy contracts which are of the whole larger tract, or which do not directly or impliedly confine the possession of the tenant to any particular boundaries or portion of the land. The distinction is recognized in numerous cases, and we think it is well settled in this state that, when the owner of a tract of land rents to another the improved portion for the purpose of cultivation, or grants to another the right and privilege of occupying and using a portion of the land, and there is no affirmative restriction upon the tenant or occupant as to the remainder, the actual possession of the owner, thus taken, extends to the boundaries of the whole tract to which he has the record title. Bowles v. Brice, 66 Tex. 730, 2 S. W. 729; Puryear v. Friery (Tex. Civ. App.) 40 S. W. 446 (writ refused); Haynes v. T. & N. O. Ry. Co., 51 Tex. Civ. App. 49, 111 S. W. 427 (writ refused); Parker v. Cockrell (Tex. Civ. App.) 31 S. W. 221.

If this were a case where the relation of landlord and tenant existed between the parties, we think the authorities just cited clearly establish the proposition that the possession of the Houston Oil Company of Texas, taken and held by the supply company, in the manner and under the circumstances as it was, extended to the limits of the entire 2,578 acres. The boundaries of the sand pit were in no manner defined by the contract, and there is nothing whatever in the contract which would limit the legal effect of the possession. The acts of possession and dominion, while confined to a particular part of the survey, were the acts of an owner. They showed an actual appropriation of the soil itself, and, while the operations may have been confined to an area less than the whole, yet there is nothing indicating that the legal consequences which naturally follow such appropriation, use, and possession of land were to be limited or restricted.

In the case of Bowles v. Brice, supra, the owner of a tract of land rented the cultivated portion to tenants, but these tenants had no authority or control over the balance of the tract. In discussing the effect of such possession, the court say:

"The question is, Must the possession in this case be restricted to the portion of the premises actually occupied by the tenants? It is held in Read v. Allen, 63 Tex. 154, and in Texas Land Co. v. Williams, 51 Tex. 61, that when a party, claiming land, leases by written contracts specific parts of it, describing them by metes and bounds, his possession through his lessees extends only to the parcels so defined. This is in accordance with the principle laid

down in Cunningham v. Frandtzen, 26 Tex. 34, that, where one in possession of a tract of land sells the portion actually occupied by him, his constructive possession, which before existed as to the remainder, immediately determines. But we consider, that we have a different case before us. Shall a party who lets to tenants for the purpose of cultivation the improved part of a tract of land be deemed to have lost his constructive possession of the portion which is unimproved? We think not. He applies the property to the only use of which it is susceptible, and should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the improved portion, cultivating it himself. It is true that the witnesses state that the tenants in this case had no right or authority over the land not in cultivation. This is ordinarily the case in the farming out of agricultural lands. A tenant who leases of one claiming a house and lot in a city a room in such house does not usually have any dominion over other parts of the property, though unoccupied. Yet is it to be held that the landlord's possession is restricted to the room so leased? This question must be answered in the negative."

The contract gave the Texas Builders' Supply Company authority to enter upon the land, load and haul out the sand, the same to be paid for by the carload. In taking possession and operating upon the land the acts of the supply company were exactly the same as that of the owner. It stood in the place of the owner, and its acts, as to their legal effect and consequences in connection with the record title, were the acts of the owner. We think the possession of the land by the supply company, under the contract, had exactly the same effect as to the seizin of the land, as if the Houston Oil Company of Texas had elected to remove the sand itself, and had contracted with its agents and servants to do the work. This matter is thoroughly and forcefully discussed by the Circuit Court of Appeals at New Orleans in the case of Houston Oil Co. v. Goodrich, 213 F. 136, construing this identical contract, and it is only necessary to call attention to that opinion, which is set out in full in the opinion of the Court of Civil Appeals.

In the discussion of this question we have adopted, in part, the language used by Judge German, a former member of this commission, in his opinion presented to the Supreme Court on former submission of this cause. It was admitted on the trial in the district court that the defendants in error were entitled to recover, unless plaintiff in error had limitation title to the 160 acres in controversy. We therefore recommend that the judgments of both courts be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.