Henry SNEED et ux., Appellants,

v.

Edward Alricks HAMILTON et al., Appellees.

No. 6079.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 14, 1957.

Rehearing Denied March 13, 1957.

Leonard E. Choate, Beaumont, R. F. King, Hemphill, for appellant.

J. H. Minton, Hemphill, Walter Morgan, Legal Dept., Humble Oil, Houston, Robert W. Hillin, Jasper, for appellee.

ANDERSON, Justice.

Holding no muniment of title, but asserting title under the ten-year statute of limitation, Art. 5510, Vernon's Ann.Civ. St., appellants, Henry Sneed and his wife Elvie, who will also be referred to as plaintiffs, brought this action of trespass to try title against Edward A. Hamilton and a number of other defendants to recover a part of the B. J. Thompson Survey that lies partly in San Augustine County and partly in Sabine County. One of the defendants, J. W. Minton, disclaimed. The others answered by general denials and pleas of not guilty, and by pleading the three, five, and ten-year statutes of limitation, Articles 5507, 5509, 5510, Vernon's Texas Civil Statutes. A motion by the defendants and also one by the plaintiffs for an instructed verdict having been first overruled, the case was submitted to a jury on special issues but the jury was unable to agree upon a verdict. When the latter fact was made known, the plaintiffs made a motion that the jury be discharged but that no mistrial be declared and that judgment be rendered in their favor. The defendants, with the exception of J. W. Minton, followed with a similar motion except that they moved for judgment in favor of themselves. Pursuant to these motions, the trial court discharged the jury without declaring a mistrial, took the motions for judgment under advisement, and subsequently overruled the plaintiffs' motion and granted that of the defendants. Judgment was rendered that the plaintiffs take nothing as regards all of the defendants.

The judgment recites its rendition upon the theory that the defendants' motion for instructed verdict should have been granted. We shall therefore test its correctness by the rules that would be applicable if the motion for instructed verdict had been granted. These require that we determine whether the evidence, when construed most favorably to the plaintiffs, raised any fact issue for the jury.

The land in controversy is a part of what is represented in the plaintiffs' original petition and in the muniments of title that the defendants introduced in evidence as being a 57-acre tract. By their original petition, which was never amended, the plaintiffs sued for the entire tract. They subsequently disclaimed as to 2.0419 acres in the southwest corner of the larger tract, and in an amended supplemental petition represented themselves as suing for only 50.9002 acres, a resurvey having disclosed that the supposed 57-acre tract actually contained only 52.9421 acres. For convenience, and on the assumption that the resurvey was correct, we shall refer to the 52.9421 acres as the 52-acre tract; to the 50.9002 acres as the 50-acre tract, or as the land in controversy; and to the 2.0419 acres as the 2-acre tract.

Appellants first contend that they conclusively proved that for more than ten consecutive years before filing suit they were in actual, peaceable and adverse possession of the entire 50-acre tract, cultivating, using or enjoying the same. Alternatively, they contend that there was sufficient evidence to carry the case to the jury on the theory of actual possession of the whole tract for the required period of time. We are unable to agree with either contention. There was no evidence to show actual possession of the whole tract for any period of ten years before the suit was filed. It is undisputed that there was a sizable area in the southwest corner of the 50-acre tract

that was unenclosed woodland until within less than ten years before the suit was instituted, and it may be that still other portions of the tract were likewise unenclosed until within less then ten years before commencement of the suit—the evidence on the point being somewhat indefinite. As regards the unenclosed area or areas, the only evidence tending to show actual possession pertained to the cutting of timber. It was to the effect that plaintiffs cut and removed timber from the 50-acre tract annually for more than ten years, but it failed to show a general cutting at any time. At some time during each year, according to the evidence, plaintiffs cut timber on the land and converted it into one or more of the following: firewood, pulpwood, poles, cross-ties, saw-stock, but there was no evidence as to the quantity of timber cut at any one time or as to where the timber was situated on the land. For all that the record discloses, only timber standing within plaintiffs' enclosures may have been cut. Even conceding, therefore, that an enclosure is not necessarily essential to an actual possession of land, and that use of land for timber purposes may in some circumstances amount to actual possession, we think there was no evidence in this instance upon which to predicate a finding that plaintiffs were in actual possession of the land outside their enclosures.

■ There was evidence, however, on which to predicate a finding that for more than ten consecutive years before filing suit plaintiffs had under fence, and were in actual, peaceable and adverse possession of, a substantial part of the land in controversy, cultivating, using or enjoying the same. There was also evidence to support a finding that from the time of their initial entry upon the land plaintiffs were adversely claiming the entire 50-acre tract, no part of which was in the actual possession of another. The evidence was sufficient, therefore, upon the theory that plaintiffs were in actual possession of part of the tract and in constructive possession of the balance of it, to require submission of

the case to the jury as to the entire 50-acre tract, unless the rule of law to which we allude was rendered inapplicable by other rules presently to be mentioned. Article 5510, Vernon's Texas Civil Statutes; Nativel v. Raymond, Tex.Civ.App., 59 S.W. 311, 314, writ denied; Houston Oil Co. of Texas v. Ainsworth, Tex.Com.App., 228 S.W. 185, 187; 2 Tex.Jur. 205, Sec. 111. In the latter event, and if, as a matter of law, plaintiffs were not in constructive possession of the unenclosed land, then, of course, there was no evidence to support their claim of title to it, and none to justify submission of the case to the jury as to the 50-acre tract. And if the evidence did not require submission with reference to the 50-acre tract as a whole, the case was properly withdrawn from the jury, since the part that plaintiffs had actual possession of was not identified or described by either pleadings or evidence so that it could be located on the ground. Furlow v. Kirby Lumber Co., Tex.Civ.App., 53 S.W.2d 642; Musgrove v. Foster Lumber Co., Tex.Civ. App., 89 S.W.2d 287; Marion County v. Sparks, Tex.Civ.App., 112 S.W.2d 798.

■ The question of whether, as a matter of law, the evidence established that the plaintiffs had not been in constructive possession of the unenclosed land is interlocked with the question of whether there was conclusive proof that the defendants or their predecessors in title had themselves been in constructive possession of it. If the defendants or their predecessors in title were in constructive possession, then the plaintiffs were not, since there can be no concurrent seizin of land under conflicting claims of right. Evitts v. Roth, 61 Tex. 81.

■ In view of the plaintiffs' actual possession of a part of the land in controversy and of their adverse claim to the balance of it, the defendants and their predecessors in title could have had constructive possession of the unenclosed land only in the event they also had actual possession of some part of the 52-acre tract.

Cunningham v. Frandtzen, 26 Tex. 34. They did have actual possession of the 2-acre tract, but only through tenants. Had they possessed it in person, and assuming them to have been the true owners of the 52-acre tract, they unquestionably would have been in constructive possession of the unenclosed land. Evitts v. Roth, 61 Tex. 81; Cook v. Easterling, Tex.Com. App., 290 S.W. 731. As it was, however, their possession, both actual and constructive, was only coextensive with that which their tenants held under and for them. Texas Land Co. v. Williams, 51 Tex. 51; Read v. Allen, 63 Tex. 154; Craig v. Cartwright, 65 Tex. 413, 424; Houston Oil Co. of Texas v. Kimball, 103 Tex. 94, 122 S.W. 533, 538, 124 S.W. 85; Cook v. Easterling, Tex.Com.App., 290 S.W. 731. A matter of primary concern, therefore, is the extent of the possession their tenants held under and for them, and this is the matter principally in dispute.

■ There were three different tenants about whom evidence was adduced. They were successive owners of land with which the 2-acre tract was enclosed. One of the three, C. L. Mills, came on the scene too late to affect the rights of the parties. Another, L. C. Conn, was there too early. It is necessary, therefore, that we examine in detail the extent of the possession of only Manse Mitchell, who followed Conn into possession. He purchased the adjoining land from Conn under date of July 27, 1938, and it was not until two years or more later that plaintiffs acquired a sufficient actual possession to afford a basis for possible constructive possession of the unenclosed land. There was no evidence to show that Mitchell purported to assume Conn's tenancy contract with the defendants or their predecessors in title, and the contract, which was in writing, was not by its terms assignable. In this respect, therefore, the situation was about the same as that which apparently prevailed in Houston Oil Co. of Texas v. Kimball, 103 Tex. 94,

122 S.W. 533, 538, 124 S.W. 85, and we think it unnecessary that we express an opinion as to the extent of the possession Conn held under and for the defendants or their predecessors in title.

Mitchell's acknowledgment of tenancy or his tenancy agreement with the defendants or their predecessors in title was oral and he alone testified as to its nature. The full extent of his testimony in this respect, he having been called by the defendants as a witness, was as follows:

On Direct Examination.

"Q. After you purchased the Conn place state whether or not you learned— strike that question. After you purchased the Conn place did you or not obtain permission from anyone to use that two acres? A. I did.

"Q. From whom did you obtain the permission? A. Benton Hamilton.

"Q. Was he a son of Mr. A. D. Hamilton? A. He was.

"Q. Is he now dead? A. Yes, sir.

"Q. Did you continue to use that little two acres and keep it under fence there until you sold the property, Mr. Mitchell? A. I did.

"Q. If the record discloses that you conveyed or transferred that property to C. L. Mills in September of 1950 for other property, then you kept the two acres under fence up until 1950? A. That's right."

On Cross-examination.

"Q. At the time you bought that from Mr. Conn your agreement was not evidenced in writing, was it, with anybody as to the use of this little two acre tract that was under fence by Mr. Lott Conn? A. It was not.

"Q. And your agreement was that you were to only use this two acre tract here, isn't that correct? A. That's right.

"Q. And you did not ask for and you did not obtain the consent of anyone as to any other portion of the land involved in this suit outside of that little two acre tract that was under fence, did you? A. I did not."

There was no evidence tending to show that Mitchell ever asserted or undertook to exercise any possessory rights over any of the remainder of the 52-acre tract, and none to suggest that he at any time conceived himself as impliedly having such rights. There was evidence, however, in addition to his own testimony, that strongly indicated that he conceived himself as having neither rights nor responsibilities toward the remainder. He neither undertook to interfere with plaintiffs' activities on the land, although fully aware of them, nor, so far as the record discloses, ever reported them to the defendants or their predecessors in title.

On such showing, we think it cannot be said that as a matter of law Mitchell held under and for the defendants or their predecessors in title to any extent in excess of the 2-acre tract. We arrive at the same conclusion regardless of whether we approach the question from the standpoint of according the largest possession the tenancy agreement authorized, either expressly or impliedly; from the standpoint of according a larger possession unless expressly or by implication the tenancy agreement affirmatively restricted the possession to the 2-acre tract; or from the standpoint of according the largest possession Mitchell claimed and exercised or the largest he purported to hold under and for the defendants or their predecessors in title. If Bowles v. Brice, 66 Tex. 724, 2 S.W. 729, and cases following it are to be construed as requiring still a different approach when improved farm land is involved, it is sufficient to note that the 2-acre tract was not of that kind. It follows that the evidence did not conclusively establish that the defendants and their predecessors in title were in constructive possession of the unenclosed land, and, hence, did not conclusively establish that plaintiffs were not in constructive possession of it. The trial court erred, therefore, in withdrawing the case from the jury and rendering judgment in favor of the defendants.

We have assumed, without deciding, that the defendants proved themselves to be holders of record title to the land, and so we forego any discussion of their pleas of limitation. Appellants state in their brief that they do not concede that the defendants did this, but they have not briefed the question.

Appellants have brought forward ninety-six points of alleged error. So many of them as are directed at matters we have discussed are overruled or sustained in accordance with whichever ruling comports with the holdings we have made. A number of the points complain of the court's charge to the jury. The matters complained of became immaterial when the case was withdrawn from the jury, and, since the charge may not be the same upon another trial, we forego passing upon these points. Other of the points complain of evidence that was permitted to be introduced by the defendants. This evidence did no more than tend to make issues of fact, and since we have construed the evidence most favorably to appellants, the evidence that is complained of becomes immaterial. It may not be offered upon another trial, and so we forego passing upon these points, also.

For the error we have mentioned, the judgment of the trial court is reversed and the cause is remanded for a new trial.