Mrs. Fay HINDS, Appellant,

v.

Hagan PARMLEY, Appellee.

No. 6082.

Court of Civil Appeals of Texas.

Beaumont.

May 15, 1958.

Collins, Garrison, Renfrow & Zeleskey, Lufkin, Barbara H. Bartlett, Houston, for appellant.

Fulmer, Fairchild & Barnett, Nacogdoches, for appellee.

ANDERSON, Justice.

Appellant, Mrs. Fay Hinds, a widow, was plaintiff in the trial court, and at times will be so referred to here. Appellee, Hagan Parmley, was the defendant.

Pleading in ordinary form of trespass to try title, and also pleading the statutes of limitation of 3, 5, 10, and 25 years, Vernon's Annotated Civil Statutes, arts. 5507, 5509. 5510, 5519, and the dominion statute (Art. 5519a, V.T.C.S.), Mrs. Hinds sued to recover two tracts of land in Nacogdoches County, one tract being a part of the I. G. Parker Survey, and the other being a part of the Antonio Ariola Grant. Defendant Parmley disclaimed as to the latter tract, the tract in the Ariola Grant, but pleaded not guilty as regards the tract in the Parker Survey. He also specially pleaded title to the tract in the Parker Survey under the various statutes of limitation above mentioned. Upon a trial before the court, without the intervention of a jury, the plaintiff was awarded judgment for the land as to which the defendant disclaimed, the tract in the Ariola Grant, but was denied relief as to the other tract. She alone has appealed, and only the tract of land in the Parker Survey is now the subject of controversy.

As regards record title, the parties claim under an agreed common source, G. A. Blount. And to the extent record title is relied upon, only a boundary dispute is involved. However, the record as a whole requires that we also take note of appellee Parmley's claim of title under the ten-year statute of limitations, Article 5510, Vernon's Texas Civil Statutes.

The boundary dispute proper is two-pronged. The parties disagree as to the proper construction of a deed by which appellant and her husband, J. H. Hinds, conveyed to one C. E. Ferguson, under date of February 8, 1926, part of what will be hereinafter referred to as the Blount tract of land. They also disagree about where a fence stood that appellant's husband erected across the Blount tract in 1927, and about whether the fence stood along an agreed common boundary.

The Blount tract is land which G. A. Blount conveyed to J. H. Hinds by deed dated January 18, 1926. Appellant holds record title to such part of it as was not conveyed to Ferguson. Appellee holds the Ferguson record title, having acquired it by deed dated June 2, 1953; and in 1954 he erected across the Blount tract, along a general east-west course, a fence which provoked the filing of this suit. The fence stands south of what appellant claims is the true south boundary of appellee's land as called for in the deed she and her husband made to Ferguson, and south of where

appellant claims the fence stood that her husband erected in 1927. At the same time, it stands north of what appellee claims is the true south boundary of his land as called for in the deed to Ferguson, and north of where appellee claims the fence stood that was erected by appellant's husband in 1927.

In the deed to Ferguson, the part of the Blount tract thereby conveyed was described in this manner:

"All that certain tract or parcel of land situated about 1 mile northward of the courthouse a part of the I. G. Parker survey joins the Corporation Line on the Eastern side of Mound Street thus described: That there is herein conveyed one-half of the property next described, that is to say, as the property faces Mound Street, the dividing line shall begin in the center of and run Eastward parallel with the North boundary line, leaving 163 feet facing Mound Street.

"Beginning at the intersection of the South line of Austin Boulevard which is 30 feet in width and the East line of Mound Street which is 50 feet in width.

"Thence N 88 E with the South line of said Austin Boulevard 1063 feet to the West bank of La Nana Bayou an iron stake from which a Hickory 18 in brs S 67.5 West 22 feet and a Persimmon 12 in brs N 14 W 13 feet;

"Thence down said bayou in a southwesterly direction with its meanders to the S E cor of this tract same being the N E corner of a tract owned by Elizabeth and Mamie Ethel Blount an iron stake from which original W T are both gone;

"Thence west 1550 feet with the North line of said Elizabeth and Mamie Ethel Blount tract to the N W corner of same on the East line of Mound Street iron stake;

"Thence North 326 feet to the place of Beginning, containing in said description is 10.75 acres of which the North portion is conveyed. Reference is made to Vol. 113, page 297, Deed Records of Nacogdoches County, Texas, for further and complete description thereof."

And essentially the same description was used in the deed by which appellee acquired the Ferguson title, the only noteworthy difference being that the description in the deed to appellee omitted the reference description contained in the concluding sentence of the foregoing and concluded in this manner: "Being the same land conveyed to C. E. Ferguson by J. H. Hinds and wife, Fay Hinds, by deed dated Feb. 8, 1926, of record in Vol. 113, p. 334, Deed Records of Nacogdoches County, Texas, to which reference is here made for all purposes."

The field notes by which the Blount tract—i. e., the 10.75 acres of land—was described in the deed to Ferguson, as well as in the deed to appellee, were the same field notes by which that tract was described in the deed from Blount to Hinds.

They may not be completely accurate, but their accuracy or lack thereof is not one of the matters in issue. We mention the matter only because we from time to time make use of data supplied by Frank Spearry, whom appellee called as a witness, and who had resurveyed the land.

According to Mr. Spearry's findings, the Blount tract actually contains 11.48, instead of 10.75, acres; the north line of the tract runs N. 87° 37′ E., instead of N. 88 E., 1063 feet from the tract's N.W. corner to La Nana Bayou; the south boundary runs S. 89° 35′ W. 1578.8 feet, instead of West 1550 feet, from the S.E. corner of the tract; and the west boundary is 328.6, instead of 326, feet long.

The parties disagree as to the proper construction of that provision in the deed to Ferguson reading as follows: "That there is herein conveyed one-half of the

property next described, that is to say, as the property faces Mound Street, the dividing line shall begin in the center of an run eastward parallel with the north boundary line, leaving 163 feet facing Mound Street." They agree that such provision should be construed as anchoring the west end of the dividing line in and midway of the west boundary of the Blount tract, but differ as to whether it should also be construed as requiring that the line be run eastward from such point parallel to the Blount tract's north boundary in the vicinity and terminated at its own first contact with La Nana Bayou. Appellant contends that it should be so construed. Appellee, on the other hand, contends that the provision should be construed as a conveyance of half of the Blount tract by quantity and that the course call for the dividing line must therefore yield. Appellant answers that, as used in the deed, "one-half" only referred to one-half of the tract's frontage on Mound Street.

As the just-mentioned contentions of the parties suggest, a dividing line run in accordance with appellant's interpretation of the deed she and her husband made to Ferguson would not divide the Blount tract into halves. Instead, due to the tract's highly irregular configuration, which itself is the result of the course La Nana Bayou pursued at material times, a line so run would segregate 7.41 acres to appellant and only 4.07 acres to appellee, if Mr. Spearry's resurvey and computations are accepted as having been correct.

The fence appellee erected in 1954 (the one that brought on the suit), supplemented by a straight line spanning the comparatively short distance between the fence's west end and the mid-point of the Blount tract's west boundary, divides the Blount tract in such manner that 5.13 acres of the tract lie north, and 6.35 acres lie south, of the fence and line—again according to Mr. Spearry's computations.

The land in suit is that portion of the Blount tract north of appellee's fence and the aforesaid supplemental line that is not included in the area appellee is conceded to own; an aggregate of .99 of an acre or of 1.06 acres, depending upon whose computations are used. Part of it lies east of the land appellee is conceded to own, in a northward loop of La Nana Bayou. The remainder, a wedge-shaped tract, lies between appellee's supplemented fence line and where appellant's construction of the deed she and her husband made to Ferguson would place the south boundary of the land that was conveyed by that deed.

The following plat, which is patterned upon one that was prepared by surveyor Spearry and placed in evidence by appellee, illustrates in a general way the matters in issue:

Lines A–B, B–H (through C, D, E, F, G), H–I, and I–A represent the boundaries of the Blount tract. Line X–C represents the common boundary as it would lie under appellant's construction of the deed to Ferguson; line X–G represents the boundary as it would lie under appellee's construction of the deed; line M–F represents appellee's fence; and point L represents the west end of the fence appellant's husband erected in 1927. The letter E designates the northernmost part of the Blount tract. The land in suit is the area that is embraced within boundaries that are represented by lines X–C, C–F (through D and E), F–M, and M–X. The .7 of an acre that is labelled Z represents the tract in the Ariola Grant as to which the defendant disclaimed. It was owned by third parties at the time appellant and her husband made the deed to Ferguson in 1926.

If surveyor Spearry's ground location for point X is accepted, and if it is assumed that the true course for line A–B, and therefore for line X–C, is N. 87° 37′ E., and that the true course for line X–M is N. 87° 50′ E., as Spearry found to be the case, the ground location of point M (the west end of appellee's fence), which is 270 feet from that of point X, is just slightly south of the ground location of line X–C. But if the true course for line A–B, and therefore for line X–C, is N. 88 E., as called for in the various deeds, and if the Spearry ground location for point X is still accepted, the ground location of point M is slightly north of the ground location of line X–C. The ground location of point L (the west end of the fence appellant's husband erected in 1927) is a matter of dispute, but it would seem to be either on line X–C or very nearly so.

If evidence that was offered by appellant is credited, the fence that was erected in 1927, and which was straight, struck La Nana Bayou about ten feet south of the Spearry ground location for point C; but if, on the other hand, evidence that was offered by appellee is credited, the fence struck the bayou slightly south of the ground location for point F, the east end of appellee's own fence. The evidence does not enable us to say how the point at which appellant claims the fence struck the bayou would compare with the ground location of point C if the latter point should be located N. 88 E., instead of N. 87° 37′ E., from point X; but it is readily apparent that in that event the point that is contended for by appellant would be considerably less than ten feet south of point C, if in fact it remained south of that point at all.

The fence consisted of net wire for a comparatively short distance east of its west end, and of barbed wire for the rest of its length. The latter portion of it was taken up during 1941, but the net wire remained standing until it was removed by one of appellee's employes, by means of a bulldozer, at some undisclosed time between the time at which appellee purchased from Mrs. Ferguson in 1953 and the time at which he erected his controversial fence in 1954.

The Fergusons do not appear to have had any cross-fences connected to the barbed wire, but they did have at least two such fences—the east and west fences of a chicken yard—connected to the net wire during virtually all of the time that wire stood.

The west end of appellee's fence (point M) stands, as we interpret the record, in the vicinity of where the 1927 fence and the east fence of the Fergusons' chicken yard came together. It is, as previously stated, and according to the Spearry findings, N. 87° 50′ E. from point X. The fence itself—i. e., appellee's fence (M–F)—, according to the same findings, runs N. 89° 19′ E. from its west to its east end. It crosses the tip of the southward loop of La Nana Bayou that is designated on the plat by the letter D along the inner edge of the bayou's south bank, thereby barely intersecting what is perhaps the bayou's west bank in that vicinity.

It is apparent, of course, that, if appellee's fence were to be projected westward along the reverse of its eastward course, it would pass considerably north of the mid-point of the Blount tract's west boundary.

The land north of the barbed-wire portion of the 1927 fence was grassland, and the Fergusons, who had no livestock, do not appear to have actually used it themselves at any time. Appellant's husband, on the other hand, grazed livestock on it regularly and had it mowed from time to time. He was not shown ever to have leased the Fergusons' land, but he did have their permission to use it.

The trial judge found as facts, in substance: that in the deed to Ferguson the description of the land thereby conveyed is latently ambiguous, the ambiguity becoming apparent only when an effort is made to fit the description to the ground; that, in the light of extraneous evidence that was heard, the deed reflected that appellant and her husband intended to convey the quantitative north half of the Blount tract, rather than just half of the tract's frontage on Mound Street, said quantitative half to be bounded on the south by a straight line extending from the mid-point of the Blount tract's west boundary to La Nana Bayou; that, except at its western terminus, a dividing line of the kind just mentioned would lie south of appellee's fence and of the land in suit all along its course; that no dispute between the interested parties regarding the location on the ground of the common boundary of their respective tracts of land preceded erection of his fence by J. H. Hinds in 1927, but that, until the fence was built, the dividing line had not been located on the ground, and its true ground location was uncertain; that J. H. Hinds intended by the fence he erected in 1927 to establish the common boundary in question; that he maintained the fence in a good state of repair for thirteen or fourteen years; that during all of that time all parties concerned rec-

ognized the fence as the common boundary of their respective tracts of land and acquiesced in the location of the boundary as marked by the fence; that, while there was no direct evidence of an express agreement regarding the location of the line, an agreement upon the fence as the line was nevertheless to be inferred from the acts and conduct of the parties; that along all of its course, unless at its western terminus, the fence stood south of where appellee's fence stands; that it extended along a straight line from near the northeast corner of the Hinds' garage to La Nana Bayou; that a course and distance call for the fence was not supplied by the evidence, but that the old fence line could be located on the ground, if that were necessary; that appellee and those through whom he claims—the Fergusons—had peaceable and adverse possession of the land in suit, cultivating, using and enjoying the same, for a period of more than ten years after the plaintiff's cause of action accrued and before the suit was filed; that J. H. Hinds used the land north of his fence both before and after the fence was removed, but that such use as he made of it was always by permission of the Fergusons.

The conclusions of law were, in substance: that by their deed of February 8, 1926, appellant and her husband conveyed to C. E. Ferguson the north half of the Blount tract (in quantity), the same to be segregated by a straight line extending from the mid-point of the Blount tract's west boundary to La Nana Bayou; that the fence appellant's husband erected in 1927 marked, or became, an agreed location of the dividing line; and that the plaintiff had failed to prove title to any of the land in suit, since the agreed boundary was south of the defendant's fence.

Appellant has brought forward 47 points of error, but it will not be necessary for us to discuss each point separately or by specific reference, since 46 of the 47 points are directed at the trial judge's findings

of fact and conclusions of law, and since all of the findings and conclusions are attacked.

Being of the opinion that the description in the deed to Ferguson of the land thereby conveyed is not ambiguous in a manner justifying recourse to extraneous evidence in construing the deed, we have refrained from setting out, and shall forego discussing, the extraneous evidence that was before the trial judge, even though such evidence was introduced without objection and was contributed to by both parties. We feel that the deed is self-sufficient and that the matter of construing it presents only questions of law. We are furthermore of the opinion that the construction the trial judge placed on the deed is not a proper one.

■■■ When all of its parts are considered together and in context, as they must be, the deed itself makes apparent, we think, that the part of it that is not entitled to be taken at face value is the part stating that "there is herein conveyed one-half of the property next described." For one thing, that part of the deed apparently was not intended to be taken at face value and as an accurate expression of what the parties to the deed had in mind, for immediately following it, in the same sentence with it, there was added the explanatory and qualifying clause reading as follows: "that is to say, as the property faces Mound Street, the dividing line shall begin in the middle of and run eastward parallel with the north boundary, leaving 163 feet facing Mound Street." For another, we feel that, if it is necessary to draw the distinction, the statement that "there is herein conveyed one-half of the property next described" must be treated as a general description and that the clause that followed it must be treated as a specific description. A conveyance in severalty was obviously intended, and it was therefore necessary that the deed itself contain data that would enable one to identify the part of the tract the deed was intended to convey. In order that the deed might meet that requirement, the parties stipulated in it for a dividing line that would begin at a specified place and that would pursue a specified course. They stipulated unequivocally that the line should run parallel to the "north boundary," by which they meant, of course, that it should run parallel to the north boundary of the Blount tract. Had they intended that the deed should convey a quantitative half, it is incredible that they would have provided that the line should so run, because not only will a line extending from the mid-point of the Blount tract's west boundary to La Nana Bayou, parallel to the tract's north boundary, not divide the Blount tract into halves, but the parties to the deed can hardly have supposed or assumed that it would. They were using in the deed field notes which disclosed not only that the Blount tract was bounded on the east by La Nana Bayou, but that the tract's north and south boundaries were not parallel to each other, and that its south boundary was 487 feet longer than its north boundary. They were therefore apprised of the fact that a dividing line such as they provided for could divide the Blount tract into halves only in the event that by miraculous coincidence the sinuosities of La Nana Bayou should produce such a result. It is not to be supposed that they gambled on that remote possibility; and there is, therefore, no plausible explanation for their having stipulated in the deed that the dividing line should run parallel to the north boundary except that they intended that it should so run. On the other hand, when it is considered that the description as a whole was awkwardly and inaptly worded; that an equal division of the Blount tract's frontage on Mound Street was obviously a matter of primary concern to the parties to the deed (as is evidenced by the fact that the explanatory clause that immediately followed the clause we are discussing began and ended on the note of frontage); and that, as previously pointed out, the parties themselves apparently did not consider the statement that "there is herein conveyed one-half of the property next described" as an accurate expression of what they had in mind, we think it sufficiently clear that the

statement was intended to apply to frontage rather than to acreage, or that it is at least not of equal dignity with the call for the dividing line to be parallel to the north boundary. And in this respect, it is perhaps also worthy of note that in a provision appearing near the end of the description, "of which the north portion is conveyed," the "north portion" rather than the "north half" was spoken of; for it seems likely that the latter wording would have been employed if the deed had been intended to convey a quantitative half. But, be that as it may, we hold that, as a matter of law, the deed required that the dividing line be run from the mid-point of the Blount tract's west boundary to La Nana Bayou, parallel to the tract's north boundary, as said north boundary runs from the northwest corner of the tract to La Nana Bayou, and that it be terminated at its own first contact with the bayou.

Other theories have been advanced by appellee in support of his contention, and of the trial judge's finding, that the deed is latently ambiguous, but we have been unable to find merit in any of them. Appellee argues, for example, that, since the most northerly part of the Blount tract is the part in the upper reaches of the northward loop of La Nana Bayou (area E on the plat) rather than the part adjacent to the boundary extending from the tract's northwest corner to La Nana Bayou (line A–B on the plat), ambiguity results from the fact that the deed merely provides that the dividing line shall run "parallel with the north boundary line" and does not otherwise identify what is to be considered as the "north boundary line." He also argues that one line can parallel another only to the extent of such other's length and that, since a line from the mid-point of the Blount tract's west boundary parallel to, and no longer than, the north boundary leading from the tract's northwest corner to the bayou would lack sixty or more feet of reaching La Nana Bayou, ambiguity results from the deed's provision, without more, that the dividing line shall run "parallel with the north boundary line." And last-

ly he argues that, since, if extended far enough, a line running eastward from the mid-point of the Blount tract's west boundary along the same course as that pursued by the north boundary would intersect La Nana Bayou three times, ambiguity results from the deed's failure to say where the dividing line is to run to or is to stop.

We think it evident that the parties to the deed considered the Blount tract to be a four-sided tract of land, with La Nana Bayou as its eastern boundary, and that in referring to the "north boundary line" they clearly had reference to the boundary between the tract's northwest corner and La Nana Bayou (line A–B on the plat). For comparative purposes, see Swisher v. Grumbles, 18 Tex. 164. We also think it sufficiently clear that they intended the dividing line to be a straight line extending from the mid-point of the Blount tract's west boundary to La Nana Bayou; there can be no serious doubt that the "north portion" was intended to extend from boundary to boundary east and west. The call for the dividing line to be parallel with the north boundary was obviously made only in the sense of fixing the dividing line's course. Strictly speaking, the dividing line could not have been extended beyond its first contact with La Nana Bayou, because it would then have entered land (the .7 of an acre tract) that was not owned by either the grantors or the grantee in the deed. Furthermore, two parcels of land instead of one would have been involved if it be assumed that the line was intended to be projected to the most easterly point at which it would contact the bayou, and we think it apparent that the parties to the deed intended a conveyance of only one parcel. There is therefore no valid reason to doubt that the dividing line was intended to extend only to its first contact with La Nana Bayou.

Passing now to the matter of establishment of the boundary by agreement, we first mention that in order that a boundary may be so established there must be either a dispute or else doubt or uncertainty about the boundary's true ground

location. Gulf Oil Corporation v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711, 714; Boothe v. Fuentes, Tex.Civ.App., 262 S.W.2d 754, 755. The trial judge found as a fact that there was doubt and uncertainty, but no dispute, about the true ground location of the line in question up until appellant's husband erected his fence in 1927. The finding is attacked by appellant as being without any evidence to support it, and we are of the opinion that appellant is correct. There was, it is true, no evidence to show that the dividing line had been located on the ground prior to the time at which the fence was erected, but the dearth of evidence in that respect will not support a finding that the line had not been located on the ground or that its true ground location was uncertain or in doubt. There was nothing else of probative value to justify the trial judge's finding, and we are therefore of the opinion that establishment of the boundary by agreement was not proved.

 We are furthermore of the opinion that there was no evidence to support the trial judge's finding that appellee and those through whom he claims title had had peaceable and adverse possession of the land in suit, cultivating, using and enjoying the same, for more than ten years after appellant's cause of action accrued and before suit was instituted; except, possibly, as the finding affects, if it does, land lying west of the east fence of the Fergusons' chicken yard. And it cannot avail the appellee anything if the evidence would support such a finding with regard to any of the land west of the east fence of the chicken yard, because such part of the land, if in fact any of the land lay north of the 1927 fence in that area, was not identified by pleadings and proof so that it could be segregated by judgment from the rest of the land in suit. Furlow v. Kirby Lumber Co., Tex.Civ.App., 53 S.W.2d 642; Musgrove v. Foster Lumber Co., Tex.Civ.App., 89 S.W.2d 287; Marion County v. Sparks, Tex.Civ.App., 112 S.W. 2d 798; Sneed v. Hamilton, Tex.Civ.App.,

299 S.W.2d 769, 772. Appellant's husband was the only one who appears to have made any actual use over a period of time of land east of the chicken yard; and if any of his land was north of his fence in that area, there was no showing that he ever held it as tenant of the Fergusons.

Upon the basis of what has been said, the judgment of the trial court is in part reversed and judgment is here rendered that appellant recover of and from appellee title to and possession of the land described in plaintiff's trial petition under the caption, "First Tract," the same being the land in the Parker Survey that has been under discussion. To the extent that it awarded judgment in favor of the plaintiff for the land in the Ariola Grant as to which the defendant disclaimed, which land was described in plaintiff's petition under the caption, "Second Tract," the judgment of the trial court is affirmed.

Appellant also sued for damages but does not appear to have submitted any evidence in support of that part of her suit. There would seem to be no justification, therefore, for remanding the case for further proceedings on that phase of the case.

In part affirmed, and in part reversed and rendered.